STATE OF IOWA, Appellee, v. LOREN R. BONE, Appellant.

**Murder:** EVIDENCE: *Res gestae.* Where deceased, on being ban-
tered by accused to come from his wagon just previous to the
homicide, replied to the accused, as he started to accept the
challenge, a companion of the deceased may testify as to what
he said in reply, such statement being *res gestae.*

APPEARANCE OF ACCUSED: *Relevancy.* Where a homicide occurred
about 4 o'clock in the afternoon, after the participant's had
an altercation about an hour previous, it is proper to exclude
evidence by accused showing there was nothing unusual in
his appearance before noon on that day.

*Re-direct examination.* Where a witness called to rebut evidence
showing deceased to have been a quarrelsome man on cross ex-
amination admits knowledge of deceased having been engaged
in quarrels, it is not improper to permit him on re-direct ex-
amination, in reply to a question whether he was a man who

| 114 | 537 |
| 117 | 506 |
| 114 | 537 |
| 121 | 398 |
| 122 | 122 |
| 122 | 178 |
| 114 | 537 |
| 128 | 722 |
| 114 | 537 |
| f130 | 60 |
| 130 | 701 |
| 114 | 537 |
| f133 | 498 |
| 114 | 537 |
| 135 | 588 |
| 114 | 537 |
| 140 | 458 |

treasured his feelings or continued his hostility, to state that he did not, that he was friendly with all but one with whom he had ever fought.

JURY SEEING ACCUSED IN JAIL. An accused, in a prosecution is not prejudiced by the fact that during the trial the jury visited the jail, and saw him there incarcerated.

Murder—Instructions: ASSUMING THAT ACCUSED KILLED DECEDENT. Where in a prosecution for homicide, the court had instructed that the jury must find beyond a reasonable doubt that accused killed the deceased before they could find him guilty, and there is no dispute as to the cause of the death, the introduction of instructions on self-defense by statements, that "accused claims that his use of the knife and the killing of deceased was in self-defense, but if you find accused was not justified in killing deceased," etc., is not erroneous as assuming that accused killed deceased.

INCLUDED OFFENSES: *Need not be charged upon when.* Where accused in a prosecution for homicide is guilty, if at all, either of murder or manslaughter, failure to refer to assaults in the instructions is not error.

PROVOCATION: *Manslaughter.* Where accused claims that shortly before the homicide he was informed of an indecent assault by deceased upon his wife, it is not error to instruct that such information was not sufficient provocation to reduce the offense to manslaughter.

*Same.* Where accused after having an altercation with the deceased claims that he was informed of an indecent assault by deceased on his wife, the court may properly instruct that if, after having time to reflect on the matter after seeing deceased, he followed him, and brought on the conflict out of resentment for the supposed injury to his wife, he would be guilty of murder in the second degree.

REFUSAL TO DEFINE GREAT BODILY INJURY: *When proper.* The court's failure to define "great bodily injury," after using the term in the instructions relating to self-defense is not erroneous.

SELF-DEFENSE. In a prosecution for homicide it is proper to instruct that to justify the taking of life in self-defense, it must appear that accused not only really and in good faith endeavored to decline any further combat, and to escape from deceased, but that the circumstances were such as to excite the fears of a reasonably prudent person that deceased intended to take his life, or to inflict great bodily harm, and accused really acted under the influence of such fears, and not in the spirit of revenge.

SAME: *Malice.* Where accused after an altercation with deceased armed himself and went in pursuit of him, it is proper to instruct that, if he armed himself for the purpose and with the intent of engaging in future conflict with deceased, and not for the honest purpose of self-defense, he was not justified in so arming himself, and such act was competent evidence of malice.

*Same.* Where accused armed himself after an altercation, and went in pursuit of deceased, the court cannot properly instruct that if accused, after the difficulty, in good faith feared a dangerous assault from deceased, and under such circumstances that he could not avoid it without danger to his life, he was justified in arming himself for self-defense, and under such circumstances being armed should not be treated as evidence of malice or intent to kill deceased. He had the right to arm himself even though he did not fear "a sudden, dangerous or deadly assault under such circumstances that he could not avoid it without danger to his life or danger of great bodily harm."

*Burden of proof.* In a prosecution for homicide, wherein the defense of self-defense is interposed, the refusal to instruct that the state must show beyond all reasonable doubt that accused was not acting in self-defense is reversible error when the only instruction on the issue was the general one which treated the issue in the nature of a defense which the accused should establish.

WATERMAN, J., concurring specially.

SHERWIN, J., taking no part.

Jurors: CHALLENGE FOR CAUSE: *Formation of opinion.* Where a juror in a murder trial has heard a statement of the facts from eye witnesses, from which he has formed an opinion, which he states will require strong evidence to remove, but thinks he can give accused a fair trial, and not be influenced by his previously conceived opinion, he is not subject to challenge for that cause.

Notice of Testimony: REVIEW ON APPEAL. Where a witness whose name is not indorsed on the indictment, is permitted to testify over objection, after the prosecution states that notice was given, and presents what it claims was a notice to the court, on appeal it will not be presumed that the notice was insufficient, or was not properly served, such notice not being included in the abstract.

*Appeal from Cerro Gordo District Court.*—HON. JOHN C. SHERWIN, Judge.

WEDNESDAY, OCTOBER 9, 1901.

DEFENDANT was indicted for the crime of murder. A trial to a jury resulted in a verdict of murder in the second degree. The defendant was sentenced to a term of 60 years, and from the judgment imposed appeals.—*Reversed.*

*Cliggitt & Rule, L. T. Genung* and *Blythe, Markley & Rinard* for appellant.

*Chas. W. Mullan,* Attorney-General, and *Chas. A. Van Vleck,* Assistant Attorney-General, for the State.

DEEMER, J.—Defendant was indicted for the murder of one James Allison. Prior to the time it is said the crime was committed these men had been friends. On the day of the homicide they met in Mason City at a livery barn. Here they had some altercation over some trifling matter, and it is claimed that when they separated Allison declared he would at some future time whip the defendant. After parting at the barn, Allison apparently went about his business, but defendant went to a butcher shop, and attempted to borrow a butcher knife, declaring, as is claimed, that he was not afraid, and that he would kill the G——d d——n son of a b——h. Not being able to procure the knife he went to a hardware store, and there purchased one, which he placed in his pocket. It is claimed that immediately after procuring the knife he went in pursuit of Allison, and took the street where he would most likely find him when he (Allison) started home. Defendant was accompanied by one Tolbred. Very shortly after starting in the direction where Allison might be found, he was discovered by defendant, seated in a wagon, with a companion, evidently on his way out of the city towards his home. The evidence tends to show that he thereupon called to Allison, saying: "You get out of that wagon. I will fix you good and plenty, you son of a b——h." Allison thereupon re-

peated the remark to his companion, saying, "I won't take that," pulled off his coat, got out of the wagon, and started back to meet defendant and his companion. Defendant also pulled off his coat, and it is claimed took the butcher knife he had theretofore purchased in his hands, and advanced towards Allison at a rapid pace. The two men met near a bridge,—defendant's companion remarking, "Give him h——l." The evidence regarding the striking the first blow is conflicting, but there is no dispute that practically as soon as they met they engaged in a struggle, in which defendant used the knife with which he had theretofore armed himself, and that he struck and wounded Allison therewith many times. The fight continued until Allison was disabled and fell upon the street. After the conflict ceased, Allison arose, and started towards his wagon, but seemed so weak that he was assisted by several persons onto a street car, and taken to a doctor's office, where he died within an hour from the time he received his wounds. There is evidence to show that while Allison was being conducted to the street car defendant remarked, while flourishing the butcher knife in his hand, that "he intended to kill the son of a b——h if it cost him 25 years." The state claims that under the facts disclosed defendant is guilty of murder, while defendant insists that what he did was in defense of his person, and that, if guilty of homicide at all, his crime is not higher than manslaughter. This latter contention is based on a claim that shortly before the encounter defendant was informed by his wife of an indecent assault made upon her by Allison, and that while smarting under the information thus given, and while his passions aroused thereby were at their height, he met Allison, and in his heated condition of mind, and provoked by the sight of his wife's assailant, entered into the conflict with Allison to which we have referred. These are the main contentions in the case, but several questions arose during the trial which are presented for review. Of these in their order.

I.  First it is argued that the court erred in not sustaining a challenge to one of the jurors for cause. This juror had, previous to the time he was called into the box, heard a statement of the facts from an eyewitness, and from that had formed an opinion, which he said at one time it would require strong evidence to remove, but that, notwithstanding this, he thought he could give defendant a fair trial, and not be influenced by his previously conceived opinion. This person was afterwards challenged peremptorily, and did not sit on the case. There was no error in overruling the challenge. The case is not stronger in its facts than *State v. Foster,* 91 Iowa, 168, and that case is supported by *State v. Vatter,* 71 Iowa, 558; *State v. Hudson,* 110 Iowa, 663; *State v. Brady,* 100 Iowa, 194, and other like decisions.

II.  A witness whose name was not indorsed on the back of the indictment, and who was not before the grand jury, was examined on behalf of the state. Objection was interposed to his testifying. When the objection was made, the county attorney stated that notice was given, and handed what he claimed was a notice to the court. After examining the paper, which it was stated was filed with the papers in the case, the court overruled the objection, and permitted the witness to testify. This paper, which was made an exhibit, is not included in the abstract, but defendant insists that the ruling was erroneous, and asks us to presume that it was not based on a sufficient showing. As it appears that a notice was given, we will not presume it was insufficient, or, in the face of this record, that it was not properly served. Defendant, in his objections, stated that he did not concede notice was served as stated; but the court examined the notice, and in the light of objections and statement of defendant, found the witness qualified.

Error is assigned on a ruling permitting Allison's companion, who was with him in the wagon when defendant

called to him (Allison) to get out, to state what Allison said in reply just as he started to get out to accept the challenge. Although there is no evidence that Bone heard the remark, the ruling was clearly correct. No argument is needed to demonstrate that this statement was part of the *res gestae.* The conflict happened about 4 or 5 o'clock in the afternoon and the altercation at the livery barn was an hour prior thereto.

Defendant offered a witness to show that there was nothing unusual in his appearance from 11 to 12 o'clock on the day in question, but the evidence was excluded. As this was before Allison and defendant had met at the livery barn, and before defendant received the information from his wife to which we have referred, the ruling was certainly correct. The evidence was entirely too remote from the main transaction to shed any light thereon. No one disputes that these parties were friendly before the meeting at the barn; and defendant's condition of mind was not material except as it bore on the main propositions above stated.

Defendant offered evidence tending to show that Allison was a quarrelsome, vindictive, dangerous man. To rebut this the state presented a witness who testified to the contrary. On cross-examination this witness admitted knowledge of Allison's having been engaged in fights and quarrels, and of his being arrested for disorderliness. On redirect he was asked if he was a man who treasured up his feelings or continued his hostility. Over defendant's objections, witness answered in substance that he did not, that "he was friendly with all but one he ever fought with." As the real character and disposition of the deceased was in issue, we see no error in the ruling, especially in view of the cross-examination of the witness.

III. During the trial the jury was taken in a body to visit the jail where the defendant was incarcerated, and

while there of course saw the defendant. This is complained of. While we doubt the propriety of such a visit, still the jury must have known that defendant was restrained of his liberty, that he was in custody pending the trial, and that he was kept in the jail. The mere fact that they saw him there would add nothing to the knowledge they already possessed, and we fail to see how defendant was in any manner prejudiced by reason of this visit. To bring a defendant to his trial, and keep him in shackles, is a very different proposition. Such conduct suggests that the accused is a dangerous man, not to be trusted under the surveillance of officers. Not so here. Every juror knew that the jail was the place for the confinement of prisoners awaiting trial. As well say that sight of the warrant under which defendant was arrested was calculated to prejudice as that seeing him confined would lead to a conclusion of guilt,

IV. Many of the instructions are complained of. It is said that the court erred in assuming that defendant killed Allison, and in not instructing with reference to the various assaults included in the charge of murder. In at least three separate instructions the jury was told that it must find from the evidence beyond a reasonable doubt that defendant killed Allison before it could find him guilty. But in referring to the issue of self-defense the subject was introduced by such statements as these: "The defendant claims that his use of the knife and the killing of James Allison was done in self-defense," etc. "In determining whether defendant was acting in self-defense at the time of the encounter with Allison resulting in his death, you should," etc.; and, "But if you find that defendant was not justified in killing Allison, you should find him guilty, even if no motive has been proved." Given in that part of the charge relating to motive and self defense, and after full explanation of what was needed to make out the offense of murder, there was, we think, no

error in making these statements. They were nothing more in effect than repetitions of defendant's claims in the event the jury found he killed Allison. Moreover, there was no dispute in the evidence regarding the cause of death. Defendant was a witness in his own behalf, and admitted having used the knife in the struggle. Allison had seven wounds about the head from an inch to six inches in length, and there were at least four wounds on the body, all made, according to the experts, with a sharp instrument. Some of these body wounds were six inches or more in depth. One of them penetrated two or three inches into the lung tissue. Another struck the spinal column, and severed the spinous process. A post-mortem was held, and a pint and a half of blood was found in the right lung cavity. Taking all the facts into consideration, there is no doubt, in the absence of expert evidence, that defendant, Bone, caused the death of Allison by assaulting him with a deadly weapon. But the experts were agreed in saying that the wounds which we have described, and which defendant admitted he inflicted, caused death. No one of them may have been sufficient, but that is not material. While the instructions to which we have referred might have been a little more guarded, yet we do not think any fair-minded person would understand therefrom, when read in connection with other parts of the charge, that the jury were to assume in their consideration of the case that Bone killed Allison. There was no error in failure to refer to assaults.

If defendant was guilty of any crime, it was either murder or manslaughter. If guilty of neither, he was not guilty. Hence, there was no error in the omission. *State v. Froelick,* 70 Iowa, 214; *State v. Munchrath,* 78 Iowa, 277; *State v. Cater,* 100 Iowa, 504; *State v. Penny,* 113 Iowa, 691. There is a radical distinction between the court's saying that a defendant is not guilty of an offense and assuming that he is guilty, or that an essential element of the

offense which is in dispute is established. In this case the court very properly said, in effect, that if the jury found defendant not guilty of homicide, he was not guilty of assault with intent, or of simple assault. When there is no evidence of murder in the first degree, the court may very properly say so in its charge, and submit only the lesser degrees; and where there is no evidence of assault with intent because of the fact that the crime intended to be committed is established if anything is shown, it is not error for the court to refuse to submit the question of assault, and thus, in effect, direct a verdict of not guilty. A verdict of assault with intent to commit a great bodily injury in such a case as this would be a travesty upon justice. After using the term "great bodily injury" in its instructions relating to self-defense, the court failed to define it. In this there was no error. *State v. Murdy,* 81 Iowa, 603; *State Savings Bank v. Black,* 91 Iowa, 496.

The court instructed, in effect, that the information received by defendant of Allison's assault upon his (defendant's) wife would not be sufficient provocation to reduce the offense to manslaughter, and further said that, "if, after having time to reflect on the matter after seeing Allison, he followed him to the bridge, and brought on the conflict by his own act, out of resentment for the supposed injury to his wife, he would be guilty of murder in the second degree." That part of the instruction quoted is clearly correct, and the part referring to knowledge of the assault on his wife is also beyond criticism. *State v. Hockett,* 70 Iowa, 442; *Lynch v. Com.,* 77 Pa. St. 205; *Pearsons' Case,* 2 Lewin, Cr. Cas. 216; 1 Hale, P. C. 487. *State v. Grugin,* 147 Mo. 39 (47 S. W. Rep. 1058, 42 L. R. A. 774), relied upon by defendant, is a radical departure from the generally accepted doctrine; too radical for general acceptance. Were we not already committed to a contrary rule, we should hesitate before applying it.

A portion of the eleventh paragraph reads as follows: "But, to justify the taking of Allison's life in self-defense, it must appear from the evidence that the defendant not only really and in good faith endeavored to decline any further combat, and to escape from Allison, before the fatal blow was given, but it must also appear that the circumstances were such as to excite the fears of a reasonable person that Allison intended to take his life, or to inflict on him a great bodily harm; and, further, that the defendant really acted under the influence of these fears, and not in a spirit of revenge." It states the doctrine of self-defense as often announced by the courts. The duty of retreat, as embodied in this excerpt, is supported by the following among other prior decisions: *State v. Warner,* 100 Iowa, 260; *State v. Jones,* 89 Iowa, 183. There may, of course, be cases where one not in the wrong is assailed in such a manner that he is justified in standing his ground and defending himself, even with a deadly weapon; but this is not one of them. Defendant, according to his own theory, was not assaulted with a deadly weapon, and there is nothing to indicate that it would have been dangerous to withdraw from the conflict.

In referring to defendant's right to arm himself, the court, after stating in the second instruction that from the use of a deadly weapon the law will presume malice, said (paragraph 13): "If you find that defendant, Bone, after his difficulty with Allison in the livery barn, honestly and in good faith feared a sudden deadly or dangerous assault from the deceased while in the pursuit of his own affairs, and under such circumstances that he could not avoid it without danger to his life or danger of great bodily harm, then he would be justified in arming himself for self-protection and defense; and under such circumstances being armed should not be treated as evidence of malice, or intent to kill Allison. But in considering this matter you have the right to and should take

into consideration the apparent necessity for such action on the part of the defendant, and if you find from the evidence that he armed himself for the purpose and with the intent of engaging in future conflict with James Allison, and for the purpose of using it in mutual conflict with Allison and not for the honest purpose of self-defense, he was not justified in so arming himself, and such act will, under such circumstances, be competent evidence of malice and intent." The last sentence of this instruction is undoubtedly correct. *State v. Neely*, 20 Iowa, 115; *Stewart v. State*, 1 Ohio St. 66; *State v. Hawkins*, 18 Or. 481 (23 Pac. Rep. 475); *Allen v. State*, 24 Tex. App. 224 (6 S. W. Rep. 187). Defendant contended that he armed himself simply for self-protection, and that when Allison attacked him in a violent manner he had the right to act on appearances, and to use the weapon for his defense; and that, even if he went further than the law justified, the possession of the weapon under the circumstances should not be considered against him. His counsel argue that he had the right to arm himself, even though he did not fear "a sudden dangerous or deadly assault under such circumstances that he could not avoid it without danger to his life or danger of great bodily harm." This argument appears to us to be sound. The instruction, as will be noticed, deals with the question of malice or intent to kill, and not with the abstract right of self-defense. And we think the first sentence is erroneous. Defendant could not possibly know in advance whether the threats he claimed Allison made against him would be carried out at such a time and place, and in such a manner as that he could avoid the assault without danger to his life, or of great harm to his person. If, from previous threats made by Allison, defendant had reasonable ground to believe, and in fact did believe, that deceased intended to take his life, or to inflict upon him some great bodily injury, and, so believing, armed himself solely for necessary self-

defense in the event of being attacked, then defendant's arming himself after the difficulty at the livery barn would not supply the intent necessary to make out the crime of murder. In other words, if defendant was justified in arming himself for self-protection, and, on meeting his adversary, killed him, the degree of his crime is to be determined from the circumstances surrounding the killing, and not from his previously having armed himself solely for self-defense. The exact fault with the charge lies in the statement that he would have no right to arm himself for self-defense unless he anticipated that the assault would be under such circumstances that he could not avoid it without danger to his life or great bodily harm. As we have already said, he could not anticipate just how and when and in what manner the assault would be made, and he could not possibly know whether it would be under such circumstances that he could not avoid it by retreating. The attorney-general contends that under the facts the instruction was not erroneous, or, if erroneous, was not prejudicial. Some of the facts were in dispute, and defendant had the right, in any event, to have his theory of the case fully presented to the jury. As supporting our views, see *Allen v. U. S.,* 157 U. S. 675 (15 Sup. Ct. Rep. 720, 39 L. Ed. 854); *Thompson v. U. S.,* 155 U. S. 271 (15 Sup. Ct. Rep. 73, 39 L. Ed. 146); *Gourko v. U. S.,* 153 U. S. 183 (14 Sup. Ct. Rep. 806, 38 L. Ed. 680).

The forty-first instruction asked by the defendant should have been given. The defendant asked an instruction to the effect that the state must show beyond all reasonable doubt that the defendant was not acting in self-defense. No such instruction was given, unless the general one relating to the whole case should be treated as covering the point. That the instruction asked announced the correct rule is conceded. *State v. Shea,* 104 Iowa, 724. The instruction in the instant case treated the issue of self-defense independently, and somewhat in the

nature of a defense which the defendant should establish; at least the jury might easily have inferred that the state need not negative the idea that defendant's acts were justifiable. After stating that, before there could be a conviction, the state must prove beyond a reasonable doubt that defendant killed Allison, and that such killing was with malice aforethought, the court gave this instruction: "If you find from the evidence beyond a reasonable doubt that the defendant, L. R. Bone, did take the life of James Allison by means of a knife, as described in the indictment, and that the killing was done with malice aforethought, either express or implied, and not in self-defense, then you should find the defendant guilty of murder in the second degree. If you find the defendant killed Allison, but find further that it was done without malice, either express or implied, and in the heat of blood or sudden passion, or upon reasonable provocation, and that it was not justifiable or excusable, he is guilty of manslaughter, and you should so find." This was followed by these statements extracted from the charge: "The defendant claims that his use of the knife," etc., "was done in self-defense." "And if you find that Allison assaulted Bone," etc. "But, to justify the taking of Allison's life in self-defense it must appear from the evidence," etc. "Before this plea can be successfully invoked, it must appear," etc. "If you find that defendant, after his difficulty in the livery barn, honestly and in good faith feared," etc. Taken together, these instructions would indicate to the unpracticed eye, that the issue of self defense was defensive, and for the defendant to establish. In any event, no clear statement of the rule was given, and we are constrained to hold that the court was in error in denying the defendant's request.

Some other questions are discussed, but as they are not likely to arise on a retrial, we do not consider them. For the errors pointed out, the judgment is reversed, and the cause remanded for a retrial.—REVERSED.

WATERMAN, J. (specially concurring).—I think the judgment must be reversed on the ground last stated in the opinion, but I consider paragraph 13 of the trial court's charge correct when applied to the evidence in the case.

SHERWIN, J., taking no part.