STATE OF IOWA v. GEORGE ALLEN MITCHELL, Appellant.

**Murder:** ADMISSION OF EVIDENCE. The admission of evidence on a prosecution for murder, of the enfeebled mental and physical appearance of deceased, if improper is held to have been without prejudice.

**Same.** Evidence that defendant in a prosecution for murder had had trouble with third parties, in which the deceased was in no manner concerned, was incompetent.

**Same.** Evidence of threatening statements concerning a defendant accused of murder, made by one who is an entire stranger to the case, is not admissible in the absence of proof of a conspiracy between such person and deceased.

**Same.** Proof of a self-serving declaration is inadmissible in a prosecution for crime.

**Same.** Where a defendant claimed to have received a wound at the time of the killing, proof of a similar wound received by him in a fight sometime prior, was admissible.

**Self-defense:** INSTRUCTION. Where the fact that defendant killed deceased was established by his own testimony, an instruction that unless the jury found the killing to have been in self-defense they should convict, was not erroneous.

**Instructions:** TO BE CONSTRUED AS A WHOLE. It is often impracticable for the court to give all the law governing the case in a single paragraph, and where the instructions construed as a whole correctly state the law and make a proper application of the facts, so as to preserve and guard a defendant's rights, he has no ground for complaint.

*Appeal from Poweshiek District Court.*— HON. W. G. CLEMENTS, Judge.

WEDNESDAY, JUNE 6, 1906.

THE defendant was tried on an indictment charging him with the murder of John Parker, and was convicted of manslaughter. He appeals.— *Affirmed.*

*D. W. Hamilton* and *J. W. Carr,* for appellant.

*Charles W. Mullen,* Attorney General, and *Lawrence De Graff,* Assistant Attorney General for the State.

SHERWIN, J.— The chronology of this case is substantially as follows: The defendant was a tenant on the farm of James Sparks under a written lease in which Sparks reserved the use of certain rooms in the house and the right to go upon said premises at any time for lawful purposes. Prior to the 19th day of August, 1904, Sparks occupied the reserved rooms and kept some stock on the premises. John Parker, the deceased, was the son of T. B. Parker, and lived with his father on a farm adjoining the Sparks land. Sparks spent the night of the 18th of August at the Parker home, and toward noon of the 19th the two Parkers and Sparks, with a team and wagon, went across a part of the Sparks farm to the house or barn lot, where they were met by the defendant and ordered off of the place. John Parker had opened a gate for the team to pass into the barn lot immediately preceding the defendant's arrival, and was standing near the wagon at the time they were ordered away. Sparks and the elder Parker were then in the wagon. Very soon thereafter John Parker and the defendant engaged in a physical conflict, in which both fell to the ground; John Parker being on top of the defendant. The advantage of such position does not appear to have been lasting, however, for young Parker soon called to his father to come and loosen the defendant's hand from his throat. The father at once responded to the call, and did loosen the defendant's grasp, and almost immediately thereafter the defendant arose and fled to the house. Whether he was pursued by one or both of the Parkers is a disputed question; but, if any pursuit was made, it was of short duration, and ended some thirty or more feet from the house. The defendant remained in the house a few moments, and then came out

with a gun in his hands and at once started for the barn, which was about seventy feet from the house. At this time both of the Parkers were in the barn, and, as we understand the record, were out of the defendant's sight. When the defendant was near the barn, John Parker came out, and almost immediately the gun held by the defendant was discharged, and Parker was killed. Two defenses were interposed — self-defense and temporary insanity.

One of the appellant's contentions is that there is not sufficient evidence to support the verdict; but with this contention we find ourselves unable to agree. We have given the entire evidence careful consideration, and are abidingly satisfied that the verdict is right.

The court permitted the state to prove the enfeebled mental and physical appearance of John Parker at the time he was killed, and afterward withdrew such testimony from the consideration of the jury. Conceding, for the purposes of this case, that the testimony was improperly admitted, it was not of a character to prejudice the defendant.

1. MURDER: admission of evidence.

It appeared during the trial that T. B. Parker, the father of the deceased, and Sparks, the landlord, had both, at different times, had slight difficulties with the defendant. It was not claimed that John Parker was in any way concerned in any of these affairs; but the appellant persistently sought to show what they were, and the statements that had been made relative thereto by Sparks and the elder Parker. This is one of the questions asked Parker on cross-examination, and the others are of the same kind: "You told Mr. Sparks about your trouble with George in the field, and about his ordering you not to come upon the premises, did you not?" The testimony was clearly incompetent for any purpose. It did not tend to prove or disprove any material issue in the case, nor did it tend to contradict or impeach the witness on any material matter, or tend to show bias or prejudice on his part.

2. SAME.

The appellant also offered testimony tending to show that Sparks had made threats to remove him from the farm and to have his son thresh him. Threats made by Sparks were not material under the record in this case.

**3. SAME.**

There is no evidence tending to show a conspiracy on the part of Sparks and the deceased, and we know of no rule of evidence permitting proof of threats by parties wholly and entirely strangers to the case. *State v. Weaver,* 57 Iowa, 730; *State v. Elliott,* 45 Iowa, 486.

The appellant proved a self-serving declaration, which was stricken out on motion. This ruling was right. *State v. Carter,* 112 Iowa, 15.

**4. SAME.**

Complaint is made of the cross-examination of the defendant, but we find nothing therein requiring specific mention, much less a reversal of the case. The appellant also attempted to show that Sparks had made improper proposals to his wife. The subject was entirely foreign to any matter involved in this case, and the court very properly refused to enter the field.

The appellant's physician was called by the state and asked as to a wound on the defendant's head in 1901. He was not permitted to testify, however, and no prejudice appears from the questions alone.

The state undertook to show that the appellant had engaged in a fight in 1901 and had then received a severe wound in the back of his head. We suppose this testimony was offered to show that one of the wounds the appellant claimed to have received on the 19th of August, 1904, was in fact inflicted at the earlier date, and, if such was its purpose, it was undoubtedly competent. The court instructed the jury, however, that it must not be considered. The defendant suffered no prejudice on account of the testimony.

**5. SAME.**

The appellant testified for himself, and on the stand stated that he held the gun when it was discharged. There was, therefore, no question as to the fact that he killed John

Parker. In one of its instructions the trial court used this language, of which complaint is made: "You are instructed that, if you are not satisfied by the evidence beyond a reason-

**6. SELF DEFENSE: instruction.** able doubt that the defendant was not acting in self-defense when he killed John Parker, you should acquit him." The criticism is that the court assumed it to be an established fact that the defendant killed Parker. It was an established fact, established by the defendant's own word, and hence it was not error so to treat it. *State v. Bone,* 114 Iowa, 537.

The following instruction was given: "If you find from the evidence that the two Parkers were trespassers, as herein defined, upon the leased premises, then the defendant

**7. INSTRUCTIONS: to be construed as a whole.** would have the right to order the Parkers to leave the premises, and after being so ordered, if they were so ordered, they refused to leave or did not leave, then the defendant would have the right to eject them from the premises, provided he should use no more force than was reasonably necessary therefor; but the defendant would not have the right to arm himself with a deadly weapon for that purpose, nor would he have the right to use a deadly weapon for that purpose." The language of the instruction is not criticised, but it is said that it is erroneous because it does not state that the defendant "would have the right to use a deadly weapon in case the Parkers made an assault upon him." It is impracticable to give all of the law governing a case in one paragraph of the charge, as we have often said, and in instructions Nos. 30, 31, 32, and 33 the court very carefully and fully announced the law governing the question of self-defense, and as carefully applied it to the peculiar facts before the jury. Indeed, the appellant, while not contending that the instructions named do not state the law, does claim that he was prejudiced by the language used in its application to the facts. There is no merit in the complaint. The evidence as to what transpired

at the barn from the inception of the difficulty until the shooting of Parker was in sharp conflict. The testimony of the state was to the effect that the defendant was the aggressor in the first instance, and that when he returned to the barn with his gun he sought young Parker and deliberately shot him while he was suing for peace. On the other hand, the defendant testified that Parker first assaulted him and that when he reached the barn with the gun Parker lunged at him with a pitchfork. In the instructions under consideration the court did no more than to apply well-settled principles of law to the facts as they might be found by the jury, and they are not open to just criticism. The jury may well have found from the evidence that there were in fact two affrays, and that the defendant renewed or sought to renew the conflict when he reached the barn with the gun.

Paragraph 34 of the court's instructions is as follows: "It is claimed by the defendant that in the first altercation between defendant and the Parkers the defendant received blows on his head, thereby affecting his mental condition and rendering him irrational, and that during the time when the defendant went to his house and armed himself with the gun. and returned to the barn with the gun in his hands and shot the defendant such irrational condition still existed, and that the defendant was laboring under mental aberration to such an extent that he did not realize what he was doing, and is therefore not responsible for his acts, and defendant was incapable of forming an intent." Following this, the court told the jury that the law presumes mental capacity and responsibility unless the fact is proven otherwise by a preponderance of the evidence. The jury was told, further, that if it found that the defendant, at the time the gun was discharged, was laboring under mental aberration to such an extent that he did not realize or comprehend his acts and was incapable of forming an intent, "it is a defense for an act committed while in that condition, and in

such event, if you so find, the defendant would not be guilty; but if you find from the evidence that the defendant knew and realized what he was doing, and was capable of forming an intent, then the defendant will be held responsible for his acts." In still another instruction the jury was directed that, if it found that the defendant was temporarily deranged to such an extent that he was incapable of deliberation and premeditation and of forming a specific intent to kill, he could not be found guilty of murder in the first degree, but that they might "consider his mental condition as bearing upon the question of malice and intent" and the grade of the offense. The appellant complains in a general way of these instructions without pointing out any specific error. We think they correctly state the law and were as favorable to the appellant as he could ask.

Several instructions were requested by the defendant, which were refused. The essentials thereof were embodied in those given by the court, and there was no error in the ruling.

The judgment must be, and it is, *affirmed*.