STATE OF IOWA, Appellee, v. G. H. CAMERON, Appellant.

CRIMINAL LAW: Argument of Counsel—Inflammatory Appeals—
1 New Trial. Enlarging in argument on the enormity of the crime charged and its dire effect on posterity, and arguing that, therefore, an acquittal should not be lightly brought about, do not constitute such an appeal as will, of itself, entitle defendant to a new trial, especially in view of the fact that the lower court refused a new trial on such ground.

CRIMINAL LAW: Argument of Counsel—Presumption. It will be
2 presumed, *nothing appearing to the contrary*, that argument by a public prosecutor was a legitimate response to an argument for the defendant.

SEDUCTION: Chaste Character—Conduct of Prosecutrix with De-
3 fendant. The jury, in passing on the question whether prose-

cutrix was of chaste character, must not be deprived of the right to consider the conduct of prosecutrix *with defendant*, (a) even though defendant denies all intercourse with prosecutrix, and (b) even though the evidence of misconduct between prosecutrix and defendant is meager and weak and is strongly disproved by the testimony for the State.

**SEDUCTION:** Error—Estoppel by Inconsistence in Testimony. A
4  defendant who denies *in toto*, in a seduction charge, that he ever had sexual intercourse with the prosecutrix, is not thereby estopped to demand that the jury be given the right to consider, in so far as it militates in his favor, what prosecutrix says did take place in the way of intercourse between them.

**SEDUCTION:** Chaste Character—Instructions—Degree of Proof.
5  Instructions reviewed, and held not vulnerable to the objection that defendant must *conclusively* establish the unchastity of the prosecutrix in a seduction charge.

**CRIMINAL LAW:** Instructions—Correct, Though Inexplicit. If an
6  instruction is correct as given, though not as explicit as desired, request *must* be made for the more explicit instruction, in order to predicate error.

*Appeal from Black Hawk District Court.*—CHAS. W. MULLAN, Judge.

FRIDAY, JUNE 30, 1916.

CONVICTION for seduction. Defendant appeals.—*Reversed.*

*Edwards, Longley, Ransier & Smith,* for appellant.

*George Cosson,* Attorney General, *John Fletcher,* Assistant Attorney General, and *E. J. Wenner,* County Attorney, for appellee.

SALINGER, J.—I. In an argument for the State, the prosecutor said, over objection, that he believed the crime of seduction was the most serious crime known to the statute books, though it did not carry a very serious penalty; that his reason for saying that this was, in his opinion, the most serious crime, was that the wrong done is not limited to the

1. CRIMINAL LAW: argument of counsel: inflammatory appeals: new trial.

present actors, but continues into the second and third genera-
tion.    He. pointed out the suffering of a child when it is
visited by the contempt of its schoolmates, when it inquired
of the mother what was meant by being a bastard, and that
even the children of the child will be subjected to this.    He
concluded by saying:

"I am saying these things to you that when you go to
examine the record in this case, be sure that you find the
defendant guilty beyond a reasonable doubt, and be sure that
there is doubt before you let him go, because if he is guilty,
he should pay the little penalty."

It is presented that this constitutes reversible misconduct.
One answer is that the record does not disclose whether the
argument complained of was the opening or closing argument
for the State, and we, therefore, have no
2. CRIMINAL LAW: means of knowing but .that what was said
argument of
counsel: pre- was a legitimate response to an argument
sumption.
made for the defendant.    The court having
overruled the objection to it, we should presume, on such
record, that something occurred which made the argument
complained of permissible. . We say, in *State v. Drake*, 128
Iowa, at page 541, that we cannot control the manner and
method of argument to the jury, beyond insisting that counsel
keep fairly within the record, and abstain from inflammatory
appeals to passion and prejudice.    From this it seems to be
argued that we are to determine *de novo* what constitutes an
inflammatory appeal to passion and prejudice.    But even as
we may not well control the manner and method of argu-
ment, we may not proceed without giving any weight to the
discretion of the trial judge, who was an eyewitness, and
make ironclad rules as to what constitutes such an improper
appeal.    When it may fairly be claimed that the evidence
tends to establish certain facts, the most guarded statement
of such facts is calculated to inflame the passion of many
jurors.    Knowing this, one prosecutor, according to difference
in temperament, will, while another will not, present these

facts as an argument for conviction. Without attempting to control the manner of presentation, we cannot well reverse a case merely because counsel argue that, because the offense is grave in consequences, that, therefore, an acquittal should not lightly be brought about—and it may fairly be claimed that the argument assailed does no more than do this. After all, it was, in effect, that the consequences of a seduction were so serious, and were visited upon so many who were guilty of no wrong, as that there should be no straining to find a reasonable doubt; that the state should not fail of the protection from a great evil by an attitude in the jury room that the matter involved was not very serious, and the wrong charged not highly injurious. It may not have been an argument meeting the most approved standards, but, after all, this brings us back to the point that we must leave something to the difference in mental attitude of counsel, and to the discretion of the presiding judge.

If there was evidence that there had been a child born, there is some legitimacy in the argument. We cannot say there was not such evidence. While there is a stipulation that excuses printing of the evidence, upon the concession that the evidence produced was such as made it a question for the jury whether defendant was guilty or innocent, and on whether prosecutrix was of previous chaste character, the fact that there was evidence upon either or both of these propositions, of course, does not exclude the possibility that there may have been evidence that, owing to the alleged illicit relations, a child was born.

II. It appears from this record that, in view of instructions asked and refused, those given eliminated from the consideration of the jury, on whether the prosecutrix was of previous chaste character, any and all conduct on her part with defendant. The State does not contend that nothing but conduct between prosecutrix and persons other than

3. SEDUCTION: chaste character: conduct of prosecutrix with defendant.

the defendant can be evidence that she is unchaste, but that the defendant is estopped to complain of this exclusion because he, himself, testified that there never had been intercourse; and it is insisted that *State v. Mitchell*, 130 Iowa 697, and *State v. Bone*, 114 Iowa 537, sustain this proposition. Also, that the evidence of misconduct with the defendant is so meager that, therefore, it was not error to eliminate from the consideration of chaste character what may have transpired between prosecutrix and defendant. It is also said that the evidence of such misconduct is not only meager and weak, but is strongly disputed by the testimony for the State.

That the record is meager as to unchaste conduct with defendant, or that evidence of such conduct is not very strong, and is strongly contradicted, is not an effective argument. That the record is more meager than it should have been, should have been met by amendment of abstract; and the weakness of the testimony and the strength with which it was met presented questions for the jury. Meagerness of the record does not avail the appellee in this court, and the weakness of testimony and the strength of opposition to it do not justify the trial court in taking it from the jury. This is said in *State v. Mitchell*, 130 Iowa, at 700:

"The appellant testified for himself, and on the stand stated that he held the gun when it was discharged. There was, therefore, no question as to the fact that he killed John Parker. In one of its instructions the trial court used this language, of which complaint is made: 'You are instructed that, if you are not satisfied by the evidence beyond a reasonable doubt that the defendant was not acting in self-defense when he killed John Parker, you should acquit him.' The criticism is that the court assumed it to be an established fact that the defendant killed Parker. It was an established fact, established by the defendant's own word, and hence it was not error so to treat it."

For the proposition thus announced, *State v. Bone*, 114 Iowa 537, is cited. That case is not, as we view it, what either of the parties to this record claim or concede it to be. In the *Bone* case, the claim by appellant is, "that the court erred in assuming that defendant killed Allison," and the concluding part of the opinion on this objection is that, while the instructions might have been a little more guarded, yet "no fair minded person would understand therefrom, when read in connection with other parts of the charge, that the jury were to assume in their consideration of the case that Bone killed Allison."

It is manifest that this cannot possibly be a holding that the court might assume this, but is the decision of a contention on whether it did assume it, by holding that it was not done.

As for the rest, in referring to the issue of self-defense, the subject was introduced by such statements as these: "The defendant claims that his use of the knife and the killing of James Allison was done in self-defense," etc. "In determining whether defendant was acting in self-defense at the time of the encounter with Allison resulting in his death, you should," etc., and "But if you find that defendant was not justified in killing Allison, you should find him guilty even if no motive has been proved."

We say that these "were nothing more in effect than repetitions of defendant's claims in the event the jury found he killed Allison. Moreover, there was no dispute in the evidence regarding the cause of death. Defendant was a witness in his own behalf, and admitted having used the knife in the struggle. . . . Taking all the facts into consideration, there is no doubt, in the absence of expert evidence, that defendant, Bone, caused the death of Allison by assaulting him with a deadly weapon."

This seems to make clear (1) that, where the defendant admits the killing, and justifies with self-defense, it is not

error to repeat such claims in the instructions, so long as confined to the issue of justifiable self-defense,—which is not a holding that, where defendant denies guilt, and the State puts in evidence of guilt, such evidence is not available to the defendant if, in addition to what the State desires to prove by it, it happens to prove something which, though it counters the testimony of defendant, aids him on some defense interposed by him.    (2) It makes it very clear that, even where the killing is admitted as a basis for justification, the effect of the admission cannot be carried beyond the claim of justification.

Let us see where the theory of the trial below leads us. The jury must have believed there was intercourse, and therefore, if you please, that, on that question, the defendant had sworn falsely.    If the court had charged the jury that, if it believed the prosecutrix on whether intercourse had occurred, and, therefore, found that the defendant had testified falsely in relation to intercourse, then it was immaterial whether prosecutrix was or was not of chaste character, we should unhesitatingly reverse.    If the court had told the jury, in terms, that, though the prosecutrix confessed to acts of unchastity with the defendant, this could have no bearing on the issue of chastity, because the defendant had denied intercourse with prosecutrix, we should unhesitatingly reverse. Is not that just what was done?    Was not the effect of the instructions refused, and those given, to advise the jury that, although they believed the testimony of the prosecutrix that there had been intercourse, or believed the testimony of third persons so asserting, this could have no bearing on the question of the chastity of prosecutrix, because defendant had denied intercourse?    Is it not, in effect, a statement that, if the jury believed the evidence on one of the essential elements of the charge,—intercourse,—that would establish that one element; but, though the same evidence satisfied the jury that prose-

4. SEDUCTION: error: estoppel by inconsistence in testimony.

cutrix was unchaste, it was not to be considered, because defendant disputed some of that evidence?

There could be no verdict of guilty unless the jury believed there had been intercourse. In this case, there would have been no such verdict if the testimony of the prosecutrix on that head had not been believed by the jury. What the court, then, did was to eliminate from the consideration of the jury one material effect that they might give the very evidence upon which it founded its verdict of guilty. If, for illustration, the evidence of prosecutrix had been not only that there was connection, but, in testifying to that fact, she had affirmatively disclosed such conduct on her part as that all must agree she could not have been chaste, the jury could believe that, in spite of defendant's denial, intercourse had occurred, also that her conduct in relation thereto was as she stated it, and yet be obliged to eliminate this conduct because, though it was believed there had been intercourse, the defendant had sworn there had not been.

The verdict had to rest on two findings—that there was intercourse, and that the prosecutrix was not unchaste. If the State's testimony were not believed, it disproved the first element, and worked an acquittal, whether prosecutrix was chaste or otherwise. No matter what defendant testified to, the jury did not believe his statement that there had been no intercourse. Say, he may not complain that, in dealing with this one element, the court adopted his view. But though this is so, and though he may not complain that the jury found there was intercourse, why does all this estop him from claiming that the State itself put in evidence under which it should have been made possible for the jury to find that the second essential element of the crime did not exist, or that there was reasonable doubt as to its existence? If the fact that the jury believed the prosecutrix, and, therefore, disbelieved the denial of defendant, and the fact of that denial authorized the jury to find the issue of chastity for the State, it is difficult to understand why that issue was sub-

mitted to the jury at all, and why there should have been a stipulation in the abstract that the evidence produced on the trial "was such that it made questions for the jury of the issue of the previous chaste character of the prosecuting witness."

The doctrine of estoppel by inconsistence in testimony or other conduct in court was carried beyond what we do in civil cases. That is to say, if defendant had done just this in a civil suit involving illicit relationship, the rule adopted below could not be sustained. If that be so, certainly that which does not work an estoppel where a man is merely sued for damages should not have that effect where the trial involves the question of whether he shall be convicted, and possibly subjected to an infamous punishment.

In Rudd v. Dewey, 121 Iowa 454, the defendant denied every allegation of the petition, which included a charge that defendant had had illicit relations with the wife of plaintiff. In another division of the answer, the intercourse was admitted, but it was urged in avoidance that it was with the knowledge, acquiescence and consent of the plaintiff. The trial court held that the admission required the jury to treat the claim of unlawful intercourse proven, and that it was unnecessary for the plaintiff to prove that claim. We say:

"By this instruction, the jurors were plainly told that the colorable confession made in the second division of the answer for the purpose of supporting an allegation of new matter by way of avoidance, obviated the necessity of proving the matter thus colorably confessed, although, in another division of the answer, all the allegations of plaintiff's petition were denied," and hold this was erroneous. We say further:

"Under our Code it has uniformly been held, in a series of decisions, the first of which was rendered before there was any specific provision on the subject, that defendant might, in different divisions of his answer, plead a general denial and a confession and avoidance, and that the effect of the general denial will not be nullified by the colorable con-

fession necessarily alleged in connection with the avoidance. . . . The case before us illustrates the policy of this rule, for defendant in his testimony absolutely denied sexual inter-- course with plaintiff's wife, and also testified as to a proposition made by the husband, which, if truly related, would have justified defendant in believing that such intercourse would not be objectionable to the husband. Whatever doubts the jury might have entertained with reference to the credibility of this testimony, defendant had the right to have it considered by them as judges of the facts."

III. In Instruction 5, it is charged that "no particular amount or degree of undue familiarity with men, or demeanor which might be deemed improper, can be set down as conclusive evidence of an unchaste character, nor is it every act of impropriety, indiscretion or even indecency that will make unchaste character, and you must determine from all of

5. SEDUCTION: chaste character: instructions: degree of proof.

the facts shown which bear upon the question whether the said Jessie Johnson was of chaste or unchaste character at and prior to the time of her alleged seduction, bearing in mind that the burden of proof is upon the defendant to establish her unchastity." It is claimed that the phrase "that no particular statement can be set down as conclusive evidence of an unchaste character," is confusing and improper, and might lead the jury to think that the unchastity is required to be shown conclusively. We think the point strained, and that the instruction upon its face, without aid from other instructions on the same subject, does not justify the criticism made.

A further exception is that the statement "that the burden of proof is upon the defendant to establish her unchastity," errs in failing to tell the jury that such burden is discharged by evidence sufficient to overcome the presumption of chastity, and in failing to say that, if the evidence on the question is sufficient to raise a reasonable doubt as to

6. CRIMINAL LAW: instructions: correct, though inexplicit.

chastity, defendant should be acquitted. The instructions, as a whole, meet both these objections, if it be assumed that the instruction standing alone does not do so. If there be a defect at all, it is the failure to add to a statement which is correct, additional correct statements which would make what is said plainer and a better guide. The remedy for that is to offer instructions which make proper amplifications. This was not done as to these points.

For excluding conduct with defendant from being considered on prior chastity, the judgment below is—*Reversed.*

EVANS, C. J., LADD and GAYNOR, JJ., concur.