State of Iowa, Appellee, v. James Lynch, Appellant.

**WITNESSES: Cross-Examination—Permissible Exclusion.** Whether a reward had been offered for the capture of burglars is not cross-examination of testimony confined exclusively to the condition of the banking rooms on the morning following the burglary.

**CRIMINAL LAW: Continuance—Admission to Avoid.** An unsuccessful effort on the part of the county attorney to defeat a motion for a continuance, by conceding that the testimony of certain witnesses whose names were indorsed on the indictment was irrelevant, incompetent, and immaterial, is no obstacle to the offering of such testimony at a *subsequent* term.

**CRIMINAL LAW: Evidence—Incriminatory Declarations by Third Party.** Declarations which are incriminatory of the accused on trial, and in his immediate presence, but made by a third party, are admissible for what they are worth.

**CRIMINAL LAW: Evidence—Demonstrative Evidence.** Record reviewed, and held to justify the reception in evidence in a burglary case of certain gas tanks, rubber hose, and acetylene torches.

**TRIAL: Instructions—Correct But Not Elaborate.** Instructions which are correct are all-sufficient, in the absence of a request for elaboration.

*Appeal from Story District Court.*—R. M. Wright, Judge.

MARCH 13, 1923.

APPELLANT was convicted of the crime of burglary, and sentenced to a term in the penitentiary, and appeals.—*Affirmed.*

*Charles H. Hall* and *Fred E. Hansen,* for appellant.

*Ben J. Gibson,* Attorney-general, *John Fletcher,* Assistant Attorney-general, and *Arthur Buck,* County. Attorney, for appellee.

ARTHUR, J.—I.  The *corpus delicti* of the offense was not in dispute. . On the night of February 6th or the morning of the 7th of February, 1920, the First National Bank of Cambridge, Iowa, was broken into and entered, and the safety deposit vault, containing the safe and boxes in which were kept bonds and valuable papers, was broken into by the use of an oxyacetylene torch, operated by the use of oxygen and acetylene gas and tools.  The lock boxes in the vault were opened, and the contents taken therefrom, consisting of bonds and promissory notes and cash.

The State introduced testimony tending to show that, about 15 minutes before 4 o'clock on the morning of February 7th, a man rapped at the door of the residence of V. L. Meacham, a farmer living about 7 miles south and 1 mile west of Cambridge, and about 14 miles north and 2 miles west of Des Moines, on the main-traveled road between Cambridge and Des Moines; that, when Meacham opened the door, the parties appearing informed him that they were stuck in a ditch, and asked if they could get help to get out; that Meacham consented to assist them, dressed himself, and secured a lantern, and, going out of the house, discovered the car in a ditch about 20 feet west of the driveway into his residence property; that, securing a team and a chain, he hitched to the bar on the back end of the car and pulled it out of the ditch; that Meacham noticed that there were five men in the party, and that one of them wore a leather coat and cap; that, between 8 and 9 o'clock of the same morning, five men drove up to the farm of H. A. Witty, 4½ miles southwest of Murray, in Clarke County, Iowa; that these men were Hank Hankins, who wore a leather coat, Fred Martin, Bill Davis, James Lynch, and somebody called "Joe;" that these five persons were riding in a Packard automobile; that, at the time of their arrival at the house of Witty, he was engaged in doing his chores, feeding cattle, etc., and paid little attention

to their arrival, until he discovered them in his house; that Witty at this time was unmarried, but had as his housekeeper the divorced wife of his brother, and this housekeeper was a cousin of Hank Hankins'; that, when Witty entered the house, after doing his chores, the five men above named, including the defendant, were sitting about in a room about 14 by 16 feet; that he saw in an open grip some government bonds, money, etc., which Hank Hankins then and there told Witty they had just secured the night before by robbing a bank at Cambridge; that this statement was made in the presence and hearing of defendant, James Lynch; that, later in the day, Hankins and Martin drove the other three men to Afton Junction, where they boarded a Great Western train for Minneapolis, Martin and Hankins later returning to the home of Witty; that later, Meacham, who had pulled the automobile out of the ditch, hearing of the bank robbery at Cambridge, went to Des Moines and told James McDonald, a detective, about pulling a Packard car out of a snowdrift near his farm; that McDonald had recently turned over to a man by the name of Ball, owner thereof, a Packard car which he had found abandoned in Des Moines, which car had been recently stolen from Ball in Des Moines, and McDonald sent two detectives with Meacham to find Ball and inspect the car which had been turned over to Ball; that Meacham identified the car as the one that he had pulled out of the ditch near his place on the morning of February 7th; that, at the time Hankins and the defendant and others visited the home of Witty, on the morning of February 7th, they had with them in the car two Presto tanks, one for containing oxygen, and the other for acetylene gas, and they also had the hose used for conveying the gas to the torch, and also had the torch, which is used for melting steel, iron, and other hard substances; that, on March 18, 1920, S. G. Garnard, then sheriff of Grundy County, Missouri, arrested James Lynch in Grundy County, Missouri; that Lynch, at the time of the arrest, had in his possession two tanks, rubber hose, and torch; that Garnard on the trial identified the tanks, rubber hose, and torch as the tanks, rubber hose, and torch found by him in the possession of Lynch at the time of his arrest.

Witty testified, on the trial, that the tanks, hose, and torch

found by Garnard in the possession of Lynch were the same tanks, hose, and torch that he had seen in the possession of Hankins, Lynch, and others at his farm on the morning of February 7th, immediately following the bank robbery at Cambridge.

Defendant offered no testimony.

The jury returned a verdict of guilty, as charged, and appellant was sentenced to a term of not to exceed 40 years in the penitentiary at Fort Madison, from which judgment this appeal is prosecuted.

Errors relied upon for reversal are assigned, attacking rulings of the court on admission of testimony and motions and instructions, which will be considered.

II. H. A. Early, president of the bank which was robbed, called by the State, testified only as to the situation he found at the bank on the morning of February 7th. On cross-examination, counsel for appellant sought to ascertain from Early whether a reward had been offered, and the amount of the reward, if any, which had been offered for the capture and conviction of the persons who had robbed the bank, which testimony was excluded. Appellant complains that the ruling was erroneous. There is no merit in this assignment. Perhaps (we do not have occasion to pass upon it) a witness receiving or claiming an award might properly be interrogated as to such matter, as bearing upon his interest.

1. WITNESSES: cross-examination: permissible exclusion.

III. At a term of court prior to the term when the trial was had, appellant had moved for a continuance of his case. In resistance to the motion, the county attorney had waived calling certain witnesses who had testified before the grand jury, and whose names were on the back of the indictment, and admitted that the testimony of such witnesses was irrelevant, incompetent, and immaterial, and stated that such admission was made for the purpose of having the motion for continuance denied. On the trial, the State called these witnesses, and appellant objected to their testifying, on the ground of the admission of the county attorney in his resistance to his motion for continuance, which objections were by the court overruled, and the

2. CRIMINAL LAW: continuance: admission to avoid.

witnesses were permitted to testify. On these rulings appellant assigns error. The assignment is without merit. The admission of the county attorney as to the character of the testimony of these witnesses was made only for the purpose of resisting the motion for continuance.

IV. Appellant complains that the court erred in permitting H. A. Witty to testify, over appellant's objection, that Hank Hankins, at his (Witty's) house, on the morning of February 7th, told him that they had been up to Cambridge and robbed the First National Bank. Witty testified, in substance, that Hankins, Lynch, Martin, Davis, and "Joe" came to his house in a Packard automobile, early in February, 1920, about 9 o'clock in the morning; that the party of five entered his house; that he talked with Hankins in the presence of the whole party; that they were all in one room, about 14 by 16 feet; that all in the room could have heard the conversation between him and Hankins; that he looked inside of a grip that the parties had brought into the room, which grip was open, and saw inside of the grip some bonds and money; that he asked Hankins where he got the contents of the grip, and Hankins said he got it at the First National Bank at Cambridge; that he had no conversation with any of the party that came to the house except Hankins; that he had known Hankins from their boyhood, and that Hankins had been to his house many times; that his housekeeper and Hankins were cousins, and very good friends, and that Hankins came to his house quite frequently; that he had been there in January before this time; that, when he asked Hankins where he got the articles that were in the grip, Hankins said, "I was up there and got that up at Cambridge—we got this at Cambridge;" that he did not say Lynch got it at the Cambridge bank,—he just said that they got it at the Cambridge bank. It appearing that the conversation between Hankins and Witty was in the presence of appellant, Lynch, in a small room, the declarations of Hankins were properly received in evidence; and it was for the jury to say whether or not, under the circumstances, appellant heard and failed to deny such declarations. *State v. Middelham*, 62 Iowa 150.

V. Appellant complains that certain questions asked Witty

3. CRIMINAL LAW: evidence: incriminatory declarations by third party.

by the county attorney were leading. We have examined the record containing the questions complained of, and think they were not really leading, but rather categorical, and not subject to objection.

Also, appellant complains of the admission and exclusion of certain other testimony in the examination of witness Witty. We have examined the record carefully with respect to this complaint, and find no error.

VI. The court permitted the introduction in evidence of the gas tanks, rubber hose, and torch found in the possession of Lynch by the sheriff of Grundy County, Missouri. Plaintiff claims that such exhibits were not properly

**4. CRIMINAL LAW: evidence: demonstrative evidence.** identified. Under the record in this case, it is undisputed that the robbery occurred, and that it was accomplished by the use of such instruments as were found in the possession of Lynch, and offered in evidence. The record further discloses that the party, consisting of Hankins, appellant, and others, who came to the house of Witty shortly after the robbery, had in the car in which they traveled two gas tanks, rubber hose, and acetylene torch. We think it was not error to admit the articles in evidence. We think that the identification of the exhibits was sufficient to permit their introduction in evidence. As bearing on identification, see *State v. Browman*, 191 Iowa 608, and cases therein cited.

In this connection, appellant complains that said exhibits and the testimony in connection therewith were offered for the purpose of proving that defendant committed some other crime. Such contention is not borne out by the record. The record discloses that the exhibits were offered solely for the purpose of connecting the defendant with the crime charged.

VII. Appellant complains of certain instructions, and particularly of the instruction dealing with circumstantial evidence. As we understand counsel for appellant, they do not claim that the instruction given on circumstan-

**5. TRIAL: instructions: correct but not elaborate.** tial evidence was not correct in the propositions of law laid down, but they contend that, under the peculiar facts and circumstances of the instant case, more complete instructions should have been given

on that subject. Appellant made no request for instructions, and cannot now be heard to complain. *State v. Cameron,* 177 Iowa 379. However, we have examined the instruction, and find it sufficient and without error.

VIII. Counsel for appellant strenuously urge that the evidence is insufficient to support a verdict of guilty. This assignment required an examination of the whole record, and we have made a careful examination of the record. We think that the verdict has ample support in the record.

We find no error in the record. Appellant was well defended, and was afforded a fair trial. The case is—*Affirmed.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.