STATE OF IOWA v. HENRY A. HOUSE, Appellant.

**Larceny:** *Jury question.* Shortly after defendant left a relative's house, where he had been visiting, they missed some gold coin and paper money. No one else except the family had free access to the room where the money was kept, and defendant knew the money was kept there and was once found in the room where it was kept. Defendant purchased a ticket to a place to which he had previously stated he was going, but instead, he went directly to another place; claiming to have done so to avoid riding on a freight train. The following day he deposited in a bank in the latter place money corresponding substantially with that missed. He claimed to have had the coin a number of years, keeping it in a purse which he lost before he made his visit, but the finder testified that there was no gold in the purse. Defendant had a small account with the bank and claimed to have had a large amount of money at interest during all the time he claimed to have had the gold. He does not explain why he failed for so long to deposit the money he claims to have carried, nor why he did not also put *it* on interest. *Held*, that a conviction of larceny was sustained, though defendant's good character was proven.

CHARACTER AS EVIDENCE. Good character is not a defense, but should be considered, in connection with all the other facts, in determining guilt; its weight being solely for the jury.

INSTRUCTIONS: *Requesting.* In a case where the evidence is wholly circumstantial, where the court charges that if the facts are proven beyond reasonable doubt, sufficient to satisfy the jury of defendant's guilt beyond all reasonable doubt, they may convict— error cannot be predicated on its failure to add, *of its own motion*, that conviction must be consistent with every reasonable hypothesis of guilt, and inconsistent with any reasonable hypothesis of innocence.

*Same.* The rule that there should be no conviction on circumstantial evidence unless the facts establish the guilt beyond all reasonable doubt and be incompatible with any reasonable hypothesis of innocence, does not refer to all facts, but to such as are essential to conviction.

*Appeal from Dubuque District Court*—HON. J. L. HUSTED, Judge.

FRIDAY, APRIL 7, 1899.

THE defendant appeals from a judgment of conviction for the crime of larceny.—*Affirmed.*

*Henderson, Hurd, Lenehan & Kiesel* for appellant.

*Milton Remley, Attorney General,* for the State.

LADD, J.—The fact that the defendant has borne a good reputation for probity, and acquired a fair education, cannot avail to shield him from the penalty of his crime. That persons so situated do sometimes violate the penal statues of the state is evident from the rule permitting proof of good character and reputation with respect to the trait involved. This is not because such proof is a defense, but on the ground that one of such character and repute would not be likely to commit the particular offense charged. *State v. Ormiston,* 66 Iowa, 151. The instructions conveyed this thought to the jury in the following language: "While such good character does not of itself constitute a defense, yet it is a circumstance which should be considered, in connection with all other facts and circumstances in evidence before you, in determining the guilt or the innocence of the defendant. Its weight and value are to be determined by you, and if, in connection with all other facts and circumstances in evidence before you, you have a reasonable doubt of the defendant's guilt, you should acquit him." This is not like the instructions condemned in *State v. Gustafson,* 50 Iowa, 196, and *State v. Lindley,* 51 Iowa, 344. In the former the jury was told such evidence could not overcome positive evidence of guilt, and in the latter, "that it could not avail as against facts positively or strongly proven." See, also, *State v. Horning,* 49 Iowa, 158. The portion of the charge quoted finds approval in *State v. Northrup,* 48 Iowa, 585, where it is said: "We must not be understood as saying that good character is a defense, for it is not, as a matter of law. But it is a fact for the consideration of the jury, as are all the other facts in the case, and they must determine

its weight in all cases." The appellant asserts that in directing good character to be considered in connection with all other facts and circumstances, by fair inference, something more than such proof was required in order to warrant an acquittal. Certainly the jurors were bound to take into consideration all the evidence introduced, in passing on the main issue, and might not, in doing so, exclude facts and circumstances shown on the trial. The weight to be attached to proof of good character, when thrown in the scales, was rightly left entirely to their judgment, and its sufficiency or insufficiency to authorize an acquittal was alone for their determination.

II. We cannot say only one conclusion might reasonably be drawn from all the evidence. John Parrott and his wife, an aunt of the defendant, resided at Worthington, Dubuque county, and kept their ready money in a drawer of a bureau in their bed room, just off the sitting room. There were ten or eleven twenty dollar gold pieces, a like number of ten dollar gold pieces, and some paper money. The defendant arrived at their home, for a visit, November 5, 1896. On that day, Mrs. Parrott, in his presence, procured the key from another drawer of this bureau, unlocked the particular drawer, and gave the defendant one dollar with which to purchase meat. He remained at their home, occupying a room in the second story of the house, until November 12, at about 8 o'clock A. M. About noon Mrs. Parrott discovered that the money had been taken. In the morning she had found the defendant in this bed room, though he had no occasion to go there; and the evidence tends to show that no one else, except the Parrotts, had free access to that room. The defendant purchased a ticket to Mapleton, Minn., but went directly to Albert Lea, in that state. The purchase of the ticket was doubtless because of his previous statement to Parrott that he was going to Mapleton, and the defendant's explanation of his change of route (i. e. to avoid riding on a freight train) may well be questioned, as he might have

ascertained the accommodations before obtaining the ticket. The following day he deposited in the First National Bank of Albert Lea three hundred and twenty-eight dollars and thirty-five cents in gold coin and other money, corresponding substantially with that in the bureau drawer. His explanation of its possession is not satisfactory. A part of the identical gold so deposited he claims to have had since 1891, and most of it for four or five years; that in an old pocketbook in a package he left it in the bank in 1895, afterwards took it to Chicago, where he engaged in a business enterprise, returned it to the bank, and again carried it to Chicago; and that, when going to Parrott's, he carried it in a Russia leather pocketbook. But during this time he had an account with this bank, ordinarily depositing sums of less than $50, though at times more, and in one instance $300, which he had borrowed of the bank. How did it happen that he carried all this gold about with him, while he was depositing items with the bank nearly every month, and sometimes oftener? And what suddenly moved him to yield this treasure on that particular day, after keeping it intact so long? Again, the defendant claimed to have kept money earned by him out at interest, to the amount of three thousand five hundred dollars, but he failed to explain why he did not care to obtain the increase on this gold. True, his brother and another say he had a considerable sum of money in this pocketbook in Chicago. But he stopped with Knapp the night before he went to Parrott's, and there lost this identical purse. Knapp found it, and, though the defendant insists that the money afterwards deposited was in it, testified that it contained no gold. In the light of this evidence, the jury may well have concluded that, when defendant went to Parrott's home, he had no gold in his possession; that the money in the bureau drawer disappeared during the time of his visit, and could have been taken by no one else; that he had a similar amount of money, of like character, soon thereafter, and gave an unreasonable explanation of its possession.

While it is possible that the defendant may have been the victim of untoward circumstances, it is not at all probable. In such a case the conclusion of the jury is final, notwithstanding the evidence of good character.

III.    It will be observed that the state relied wholly on circumstantial evidence. The court, after defining direct and circumstantial evidence, instructed the jury that "if facts and circumstances are proven beyond reasonable doubt, sufficient to satisfy you of the guilt of the defendant beyond all reasonable doubt, such evidence is sufficient to justify you in finding the defendant guilty. If, however, the state has failed to prove facts and circumstances beyond reasonable doubt, sufficient to satisfy you of the guilt of the defendant beyond all reasonable doubt, then it is your duty to acquit the defendant." The appellant complains that the usual caution, that conviction must be consistent with every reasonable hypothesis of guilt, and inconsistent with any reasonable hypothesis of innocence, was not given. True, the jury must be instructed on all material issues of the case. *State v. Carnagy,* 106 Iowa, 483, and cases cited. But where an instruction is correct as given, though not as explicit as desired, error cannot be predicated thereon, in the absence of a request. *State v. Illsley,* 81 Iowa, 49, *State v. Watson,* 81 Iowa, 380, *State v. Helvin,* 65 Iowa, 289, *State v. Tweedy,* 11 Iowa, 350, *State v. Hathaway,* 100 Iowa, 225; *State v. Gaston,* 96 Iowa, 505; *State v. Woodward,* 84 Iowa, 172. Nor need an instruction on each special phase of the case be given unless requested. *State v. Miller,* 65 Iowa, 65; *State v. Stevens,* 67 Iowa, 557; *State v. Nadal,* 69 Iowa, 483. There was no error in the omission. The Texas cases relied on by appellant are based on a statute requiring the judge, in all actions for felony, to "distinctly set forth the law applicable to the case, whether asked or not." This appears to have been interpreted to mean every phase or detail developed on the trial. If so, then, when any point is omitted by the court, as by oversight or mistake,

even though counsel are fully aware of it, they may remain silent, and, without any request that the point be covered by the charge, secure a reversal. We agree with the supreme court of Indiana, as stated in *Powers v. State,* 87 Ind. 153, that "such a practice would be wrong in theory and mischievous in results." 2 Thompson Trials, section 2340. The instruction requested was erroneous. Not all the facts as herein stated, but only those essential to conviction, must be established beyond a reasonable doubt, and be incompatible with any reasonable hypothesis of innocence. Besides, many facts may be fully established in defendant's favor, and yet, from others, defendant's guilt found. *State v. Cohen,* 108 Iowa *post.*

IV. The exceptions to the rulings on the admissibility of evidence are trivial. Whether the defendant had been a suitor of the daughter of a witness' brother, or whether he did as a witness to character stated he heard one Register declare, were collateral matters, which could in no way aid in reaching a just conclusion. The record refutes the claim, made in argument, that the defendant was not accorded a fair and impartial trial.—AFFIRMED.