STATE OF IOWA, appellee, v. ALBERT CHARLES WESSLING, appellant.

No. 52428.

(Reported in 150 N.W.2d 301)

MAY 2, 1967.

REHEARING DENIED AUGUST 30, 1967.

H. A. McQueen, of Sioux City, for appellant.

Richard C. Turner, Attorney General, Stephen C. Robinson, Assistant Attorney General, Richard E. Lee, County Attorney, and Mark McCormick, of Fort Dodge, all for appellee.

SNELL, J.—Appellant, Albert Charles Wessling, was by information charged with breaking and entering in violation of section 708.8, 1962 Code of Iowa, and with being a habitual felon in violation of section 747.1, Code of Iowa. Following trials and adverse jury verdicts he was sentenced and now appeals.

Appellant objected to being referred to as the defendant but he was such and we will so refer to him.

What defendant calls "propositions relied upon for reversal" we will consider as allegations of error.

Defendant urges 13 different grounds for reversal. They are reduced to nine in his statement of issues on appeal. Some are unique, some are repetitious in that they involve comparable problems, none has sufficient merit for reversal.

At 3:15 a.m. on May 12, 1965, an electric alarm at a bowling alley next door to the Moose Club Lodge in Webster City alerted the police. Officers Bordwell and Spellmeyer were the first to arrive at the scene. They observed someone running in the pasture north of the bowling alley. Officer Bordwell then went to the fence but saw no one. He stayed in that vicinity for 20 to 30 minutes. He then went on patrol and found on a nearby driveway a 1956 Chevrolet that defendant had borrowed from a friend and had been using.

Officer Bordwell returned to the bowling alley where he again saw someone running. Together with Chief Neff he went to the second fence and found a canvas duffel bag containing a crowbar, hammer and other tools. They followed a set of footprints to the east edge of the field. Along the fence line they lost the prints. They crossed the fence and went into a ravine east of the river and found a set of tracks a couple of hundred yards from where they lost them going east. Chief Neff followed the prints on the river and Officer Bordwell started up on the bank. They both observed the defendant at the same time hiding in a little cave or culvert area about 100 feet west of the river. Defendant said he had been fishing but had no equipment with him.

The defendant had in his possession a blue-colored jacket which he was sitting on. He claimed that it did not belong to him.

Defendant was taken into custody. He was advised "that he had a right to an attorney and that he did not have to make any statement because it could be used against him in court."

Officer Beek testified that he first saw the defendant at the police station about 5 a.m. He advised the defendant of his constitutional rights. Defendant was told he could use the telephone. Defendant answered, "I know that." The defendant stated he would call his attorney later. He had $260 in his billfold at that time. In the cell area the defendant was asked to

remove his clothes with the exception of his undershorts and T-shirt. The clothes, including the jacket, were placed in plastic bags and sent to the FBI.

Defendant was fully advised and aware of his rights.

In a later conversation with Officer Beek defendant said, "You shouldn't come to conclusions like this. We are on opposite bowling teams."

The officers learned, while at breakfast at approximately 6:30 or 7 o'clock, that the Moose Lodge had been broken into.

Officer Kennedy testified that at about 7 to 7:30 a.m. he went to the Moose Lodge and searched the area in the rear; that he crossed one fence and then went to a fence by the plowed field. He saw tracks leading into the plowed field. Nickels, dimes and quarters were scattered along the footprints. When picked up they totalled about $35. He saw tracks leading into the plowed field. The footprints led to the north and northwest. They then went east in a furrow of the plowed ground which was soft. The tracks were clear until they went east and then looked like knee and hand prints to the east line of the plowed field. In a furrow he found a pair of gloves twisted together.

At about 7 a.m. Chief Neff returned to the Moose Club Lodge. He took the strike plate and wood from the door and took a fragment of blue cloth from the fence behind the Moose Lodge, 200 to 250 feet from where the tools were found. He also took soil samples from the plowed field (State's Exhibit "X"). The several exhibits were mailed to FBI laboratories in Washington, D. C., for analysis.

Special Agent Poppleton of the FBI testified as an expert in toolmark identification. He examined all of the tools submitted to him and stated conclusively that the toolmarks on the strike plate from the Moose Lodge door were made by a screwdriver (State's Exhibit "O"), which was among the tools found by the fence behind the Moose Lodge.

Special Agent Miller of the FBI laboratory in Washington testified that a chemical analysis of the paint from State's Exhibit "O", the screwdriver, had paint on it from the wood and strike plate taken from the door. He also concluded that the soil removed from the jacket pockets was exactly the same as the

soil sample, State's Exhibit "X". The soil samples in defendant's shoes, gloves and trousers were too small and limited for a complete mineralogical analysis or chemical testing.

Special Agent Duckett of the FBI testified as an expert witness that the material in State's Exhibit "J", a piece of torn cloth, corresponded exactly with the material found in the right sleeve of the jacket, State's Exhibit "L". He found bits of suede leather in the pockets of the jacket that matched exactly the suede gloves found in the plowed field.

Because of the defendant's challenge to the trial court's procedure we note the chronological record.

On May 12, 1965, an information was filed in police court charging defendant with breaking and entering the Moose Club.

On May 13, 1965, he filed an appearance bond.

On October 4, 1965, a verified and approved county attorney's information was filed in district court accusing defendant of breaking and entering the Moose Lodge Club.

The court's calendar entry on October 8, 1965, is as follows:

"Defendant appeared in court with his attorney Jim Lawyer, admits receipt of a copy of the information, informed under true name, waives formal arraignment & requests time in which to plead. Defendant granted until 1:15 p.m. Oct. 14th to plead to information."

On October 14 defendant filed a written plea of "not guilty" and a motion for continuance for trial at the next term of court. The case by consent was continued until the November term of court.

According to the clerk's filing stamp on December 9, 1965, two new informations against defendant were filed in the same case. For some unexplained reason, but which we consider of little significance, there is a slight discrepancy in the dates written in the various endorsements thereon. The county attorney's signature, the date of the judge's approval and the amount of bail appear to have been written with a coarse-pointed pen. The date of the county attorney's verification, the penwritten filing date of the information and the signatures of the deputy clerk appear to have been written with a fine-pointed pen. Neither appears the same as the judge's signature. Similarities would

indicate that the county attorney filled in the date of the judge's approval and the deputy clerk filled in the date of the county attorney's verification and filing date. The approval is dated December 7, 1965, and the other dates are December 8.

The first of these two informations according to the filing stamp was filed December 9, 1965, at 2:32 p.m. It charged defendant with breaking and entering and with being a habitual felon in that he had previously twice been convicted of breaking and entering.

The second information filed at 2:39 p.m. on December 9, 1965, charged breaking and entering and in its charging part was identical with the information filed October 4, 1965. On December 13, 1965, defendant filed two separate motions to dismiss information, set aside information and quash. One motion attacked the breaking and entering information. The other motion specifically by name attacked the habitual felon information.

Subsequent calendar entries by the court show the following:

"Dec. 17, 1965

"Def't present in court with attorney James Lawyer, he states he is charged in his true name, has rec'd a copy of the information, waives formal arraignment, waives time and enters his plea of not guilty. Bond now on file shall remain in full force and effect. Trial to commence Dec. 20, 1965, at 10:00 a.m.

"Same day

"Motion to dismiss information, set aside information and quash was argued by counsel. Motion overruled in open court.

"Dec. 20, 1965

"All motions filed have been ruled on. Case called in open court. State ready, def't present in court with counsel, James Lawyer and Myron Dunn. Commenced drawing the jury. Jury drawn and sworn at 12:30 p.m. Court adjourned until 9:30 a.m. Dec. 21, 1965."

The trial on the breaking and entering charge continued on

December 21. The evidence was introduced, the jury was instructed and the case submitted on December 22.

The jury returned a verdict of guilty of breaking and entering. Defendant was present in court. Time for sentencing was set for December 29 at 10 a.m.

On December 28 defendant filed motion for judgment notwithstanding the verdict, motion for new trial and exceptions to instructions.

On December 29 defendant was present with his attorney. The pending motions were heard. The court then commented:

"The Court: Now I believe that the next matter to take up is a new law in the State of Iowa, House File 565, which has now become the law of the State of Iowa. This is in matters where a person, a defendant, is charged with a crime of more than one offense. The law says that the trial shall be had on the indictment prepared for the purpose of trial which states the facts only of the current offense, and we did that in said case.

"Then the law further provides that 'after conviction, but prior to pronouncement of sentence, if the indictment alleges one or more prior convictions which by the Code, subject the offender to an increased sentence, he shall have the opportunity in open court to affirm or deny that he is identical with the person previously convicted. If he denies the identity, sentence shall be postponed for such time as to permit a trial before a jury on the sole issue of the offender's identity with the person previously convicted.'"

Counsel asked for a short recess. After recess counsel made the following statement.

"Mr. Lawyer: May the record show that the defendant in this case has raised a question that I have not sufficiently and adequately advised him in connection with the habitual information filed herein, and that but for my failure to advise his course of action would have been different, and based upon other matters which I do not feel at liberty to disclose, to make a part of this record, I would like to ask the Court at this time for permission to withdraw and to give the defendant sufficient time to counsel with other counsel since I do not feel that I can adequately and properly advise him at this time."

1252

On the request of defendant himself the request was granted and the hearing was continued until December 31.

On December 31 defendant appeared with temporary counsel and further hearing was continued until January 8, 1966.

On January 8 defendant appeared with new counsel of his own choosing.

Defendant filed an amendment to motion in arrest of judgment.

Without indicating that there was any merit therein we quote excerpts therefrom:

"1. That the defendant was arrested and charged under a preliminary Information issued by a Justice of Peace on a charge of Breaking and Entering and thereafter bound to the Hamilton County Grand Jury. That the State of Iowa deliberately, *commutatiously* (sic), and with intent to deprive this defendant of his right to have the charge presented before the Hamilton County Grand Jury filed a County Attorney's Information October 4, 1965, charging him with Breaking and Entering and violating Section 708.8 of the 1962 Code of Iowa. That the defendant was deprived of his constitutional rights and at no time did he or his counsel waive his rights to have this same charge presented to the Hamilton Grand Jury.

"2. That said Information filed on October 4, 1965, was dismissed against this defendant without his permission, by reason of said dismissal this defendant was deprived of his constitutional rights, due process of law and placed in jeopardy thereby.

"3. That after the dismissal of the Information filed October 4, 1965, without the defendant's consent the State of Iowa purportedly did on December 9, 1965, file an identical County Attorney's Information without the consent of the defendant. * * *."

Defendant claimed he was not present as indicated by the record. He claimed he had never been arrested or arraigned. He claimed the court had no jurisdiction to sentence defendant under the habitual criminal statutes.

He also filed a separate plea to the jurisdiction of the court.

On March 8, 1966, the pending matter, i.e., the identity of defendant in former convictions, was reached for trial. De-

fendant and his counsel were present but refused to plead or participate. The court entered a plea of not guilty for defendant. We quote a few excerpts from counsel's statement made in the absence of the jury: "* * * defendant states * * * that he does not wish to remain in this courtroom, and that counsel states that he has no right to be here, states that he will not partake in this case, in any case charging this defendant under 747.1, and that the defendant will not partake in any proceeding, and refuses to take any action or take any part in the County Attorney's Information charging this defendant under 747.1 of the 1962 Code of Iowa in an information filed in this Court on December 9, 1965. * * * If the defendant is having a jury trial on some other proceedings under 747.1, the defendant refuses and will not enter into any proceedings in this court, and will not submit his person to the jurisdiction of this court, nor will his attorney partake in it."

The jury was returned to the courtroom. Trial began and proceeded with defendant and Mr. McQueen, his attorney, seated in the auditorium of the courtroom. The record indicates that the court was meticulous in protecting defendant's rights.

When identified by counsel for the State, defendant said: "As the defendant, I cannot be identified or pointed out in this courtroom."

When given an opportunity to examine prospective jurors on voir dire examination defendant said:

"I want to make an objection. I, Albert Wessling, state I am not the defendant. State I am being forced to sit in this courtroom against my will. I am being held illegally. I demand I be returned to the Webster City jail where I am being held in lieu of bond."

Comparable statements, some at greater length, were made by defendant several times throughout the proceedings.

Evidence was introduced.

A copy of proposed instructions was tendered defendant.

Counsel for the State addressed the jury.

Defendant was offered opportunity to argue. Defendant did not respond except to say:

"I, Albert Wessling, a person, no jury can convict me as a person when I have not been in any way charged with a crime. I have been forced to sit in the courtroom, knowing that no evidence was given to the jury to disprove anything I have said. I have never been given an opportunity to make a legal record, or have been afforded a hearing on this legal matter of jurisdiction.

"Again I say I am not the defendant. I refuse to answer when so addressed. I have not entered into this purported trial. I, nor neither of my two lawyers have appeared to answer this charge and will not until this matter of jurisdiction of this Court over my person has been adjudicated. This person is entitled to an Appealable Bond Order."

The case was submitted and the jury returned a verdict as follows:

"We the jury find the defendant, Albert Charles Wessling. to be the identical person who was convicted in Case No. 26668 in the District Court of the State of Iowa in and for Woodbury County, and the same person who was convicted in Case No. 45863 in the District Court of the State of Iowa in and for Polk County."

From judgment and sentence subsequently imposed defendant appealed.

I. Defendant claims the trial court committed error in refusing to suppress testimony relative to defendant's clothing and property.

Defendant does not deny that evidence seized substantially incident to a lawful arrest may be used. Defendant cites State v. Raymond, 258 Iowa 1339, 142 N.W.2d 444, and State v. Polton, 259 Iowa 435, 143 N.W.2d 307, in support of his claim. Neither case helps defendant. In the case at bar defendant, in jail, was asked to remove his outer garments. He did so and was given other clothing. On voir dire he said he first objected and then complied. His clothes were examined. Defendant claims he was never arrested. His position is untenable. The police were originally investigating the bowling alley attempted breakin and there was no reference to the Moose Club when defendant was taken into custody. However, he was then and

later advised of his constitutional rights. When at four o'clock in the morning and near the scene of a breakin a suspect is taken into custody by the police, handcuffed, taken to jail and placed in a cell, it overtakes our credulity to say that he is not under arrest.

Section 755.4, Code of Iowa, authorizes an arrest by a peace officer without a warrant under circumstances such as existed in this case.

██ II. Defendant was advised of his right to counsel and right to remain silent, said he knew of his right and was offered the use of the telephone. He made no inculpatory statement. There was no violation of his constitutional rights under the rules existing before or after the decision in Miranda v. State of Arizona, 384 U. S. 436, 86 S. Ct. 1602 16 L. Ed.2d 694, 10 A. L. R.3d 974, decided June 13, 1966. This case was tried before the decision in Miranda and would not be controlled thereby. Johnson v. State of New Jersey, 384 U. S. 719, 86 S. Ct. 1772, 16 L. Ed.2d 882, and Davis v. State of North Carolina, 384 U. S. 737, 86 S. Ct. 1761, 16 L. Ed.2d 895. As to the right to counsel see Escobedo v. State of Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed.2d 977.

██ III. Defendant argues that the trial court committed reversible error in overruling defendant's objection to the State's question, "Did he ever deny to you his guilt of this crime?" The only objection was, "This is objected to as being incompetent, irrelevant and immaterial to any issue in this case."

Defendant cites no authorities in support of his position.

The question was of doubtful propriety, little probative value and negative in character, but under the circumstances the ruling was not reversible error. The question did not raise any constitutional issue.

The question was directed to officer Beek. It followed Chief Neff's testimony that defendant claimed he had never broken into or stolen anything in his life.

There is no record that defendant ever admitted anything in connection with the crime. Defendant's plea of not guilty was of record. We assume that the provisions of section 780.5, Code of Iowa, were observed and the jury advised in the begin-

ning as to defendant's plea of not guilty. The court's instructions to the jury stated the defendant's plea of not guilty and that it "put in issue and denied every material allegation of the information." With all these denials of guilt in the record the fact that defendant did not also deny guilt to officer Beek was of little importance.

Even constitutional errors may be so unimportant that they do not require reversal. Chapman v. California, 386 U. S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, 35 U. S. Law Week 4197.

IV. Defendant argues that there was insufficient evidence for submission to the jury. We do not agree.

That there was a breaking and entering and a larceny appeared without dispute. There was sufficient evidence connecting defendant therewith to generate a question for the jury. Further review of the evidence is unnecessary.

We view the evidence in the light most favorable to the State. The jury verdict is binding on us unless lacking in substantial evidence or clearly against the weight of the evidence. State v. Stodola, 257 Iowa 863, 865, 866, 134 N.W.2d 920, and citations therein.

V. At the close of the State's evidence defendant moved for a directed verdict. The motion was overruled. According to the record it was agreed that the motion was renewed after defendant rested. No ruling thereon appears and defendant alleges error in that he was deprived of his right to appeal. The submission of the case to the jury effectively overruled the motion to direct. We have considered the motion on appeal. The objection is without merit.

VI. Following the introduction of the evidence the record (in chambers) shows among other proceedings the following statement by counsel for defendant: "Let the record show that the defendant has no requested instructions and that we merely reserve the right to take exception at such time as it is provided by law in the event the same become necessary."

When the case was submitted to the jury instruction No. 5 adequately and properly defined direct and circumstantial evidence. It told the jury what was necessary to warrant a conviction on circumstantial evidence alone.

Defendant's motion for new trial alleged that the court misdirected the jury because this instruction "is an improper statement of the law under the evidence of this case for the reason that it fails to instruct the jury that this case was based solely upon circumstantial evidence."

In support of his claim of reversible error because of this instruction defendant relies on State v. Mikels, 224 Iowa 1121, 278 N.W. 924. In that case defendant requested an instruction beginning with these words:

"You are instructed that in this case the State relies wholly upon circumstantial evidence * * *." In commenting thereon the opinion says on page 1125:

"The evidence * * * being wholly circumstantial, the jury should have been so instructed, in connection with and supplementary to instructions laying down the established rules governing the manner of consideration by a jury of the evidence when, in a criminal case, it is wholly circumstantial in character."

This case has been cited only once by our court. In State v. Bazoukas, 226 Iowa 1385, 1389, 286 N.W. 458, we said:

"Instruction No. 7 is challenged upon the ground that the court failed to define the meanings of direct and circumstantial evidence, failed to tell the jury that the case of the State was based wholly upon circumstantial evidence and permitted the jury to infer or assume that it was based upon both direct and circumstantial evidence.

"In support of this assignment of error appellants cite State v. Mikels, 224 Iowa 1121, 278 N.W. 924; State v. Blydenburg, 135 Iowa 264, 112 N.W. 634, 14 Ann. Cas. 443, and certain other authorities referred to in said cases.

"However, no request for additional or more explicit instructions was made by appellants. In the absence of such request a trial court does not commit reversible error in failing to fully instruct upon the subject of circumstantial evidence. State v. Hart, 140 Iowa 456, 118 N.W. 784; State v. Alley, 149 Iowa 196, 128 N.W. 343; State v. House, 108 Iowa 68, 78 N.W. 859; State v. Lynch, 195 Iowa 560, 192 N.W. 423. * * *."

Commenting further on page 1390 of 226 Iowa, we said:

"The instruction was primarily devoted to the discussion of circumstantial evidence, and mentioned direct evidence only as therefrom differentiated. Although it did not baldly recite that the evidence was wholly circumstantial, we think no other inference could reasonably have been drawn therefrom.

"It appears that the criticized instruction required the jury to treat all the evidence as being circumstantial in character. In other words the instruction correctly advised the jurors how to proceed but did not tell them the legal basis and reason therefor. Assuming the evidence to have been wholly circumstantial in character, no request was made for an instruction in that form. Whether the criticized instruction would have been erroneous had such request been made we need not decide."

What was there said is appropriate here.

In State v. Russell, 245 Iowa 1190, 1205, 66 N.W.2d 35, we said:

"We have many times held, from our earlier decisions to our recent ones, that a party desiring additional or more explicit instruction should request it. Defendant's failure to present an instruction on this matter or to make known to the court his wish to so instruct deprives him of a basis for successful appeal in this court for such failure to instruct."

See also State v. Jensen, 245 Iowa 1363, 1371, 66 N.W.2d 480.

In State v. Holoubek, 246 Iowa 109, 112, 66 N.W.2d 861, we said:

"As to the failure of the trial court to be explicit in the instructions given, an examination of the instructions shows them to correctly state the legal questions involved. If elaboration thereof was desired, appellant should have so requested." (Citations)

Again in State v. Baker, 246 Iowa 215, 231, 66 N.W.2d 303, we said:

 "It is a well-settled rule of this court that where an instruction is correct as given, though not as explicit as a party may desire, error cannot be based thereon, in the absence of a request for additional instruction." (Citations)

In the case before us we find no misstatement of the law or request for amplifying instruction. We need not decide whether there would have been error in refusing to give such an instruction if requested.

VII. Instruction No. 10 told the jury that defendant need not be a witness "and the exercise of such right on the part of the defendant shall not be considered by the jury for any purpose."

Neither the correctness nor propriety of the instruction is attacked, but defendant now says that there should have been added to the instruction a statement that defendant need not call any witnesses in his own behalf.

What we have said in Division VI, supra, need not be repeated.

The complaint is without merit.

VIII. Defendant argues that there was error in failure to quash the informations because of discrepancy in dates of approval and filing. We do not agree. There was nothing misleading or prejudicial to defendant. The dates did not refer to the alleged offense or any evidence relative thereto. In State v. Sommer, 249 Iowa 160, 175, 86 N.W.2d 115, we referred to an error in the court's approval of an information as an oversight and not reversible error.

IX. Defendant's remaining allegations of error relate to procedure following conviction of breaking and entering under our recidivist or habitual-criminal statutes. The allegations misconceive the basic nature of the procedure.

Prior to July 4, 1965, under chapter 747, Code of Iowa, allegations of prior convictions were submitted to the jury in the same charge and at the same time as the current charge. It was plausibly argued in many jurisdictions that proof of prior felony convictions unfairly prejudiced the defense to the current charge.

The Supreme Court of Connecticut in 1921 suggested procedure in State v. Ferrone, 96 Conn. 160, 113 A. 452. In Lane v. Warden, Md., 320 F.2d 179, the Fourth Circuit Court directed attention thereto.

In the light of the Lane decision our legislature, in an effort to assure defendant charged in a criminal case with prior convictions of a fair and impartial trial, adopted in 1965 chapter 444, section 3, which is now section 769.6, Code, 1966.

It is the use of the procedure outlined in this section of which defendant now complains. Here our legislature made an effort to comply with the trend of the more modern decisions in criminal cases involving prior convictions. Defendant's complaint is wholly without merit.

In connection with proceedings under this statute, it is suggested at the time of arraignment let the entire indictment or information be read to defendant and let defendant plead thereto. In the event his plea is not guilty, then he is entitled to a jury trial. The indictment or information should be divided as was done in the case at bar, and only that portion referring to the incident charged should be read by the county attorney to the jury. If on the incident charged the jury by its verdict finds the defendant guilty of the incident charged, defendant is then called to either admit or deny the previous convictions. If he admits them, the enhanced penalty may then be imposed. If he denies them, the same jury may or in the discretion of the court a separate jury may consider only the previous convictions. In the event of a verdict finding defendant the same person as in the previous convictions, he may then be sentenced under the enhanced penalty.

The procedure now provided by our statute and herein suggested would be in accord with the majority opinion, the concurring opinion and the dissenting opinion in Spencer v. State of Texas, 385 U. S. 554, 586, 87 S. Ct. 648, 665, decided by the Supreme Court of the United States, January 23, 1967. In his closing comment Mr. Chief Justice Warren notes: "In all, some 30 States have recidivist procedures which postpone the introduction of prior convictions until after the jury has found the defendant guilty of the crime currently charged."

Since the compilation of the list appearing in the footnote Iowa has adopted the procedure here involved.

In spite of defendant's novel, vehement but unsound claim that he refused to submit his person to the jurisdiction of the

court for sentencing after conviction of a felony, the court's procedure was pursuant to statute.

Defendant had been brought from the jail to the courtroom. We think he was there personally and legally.

We recently considered the nature of our recidivist statutes. In State v. Davis, 258 Iowa 1192, 1195, 140 N.W.2d 925, 926, defendant had been convicted of robbery and was sentenced as a habitual felon. We said:

"* * * an allegation of a prior conviction does not charge a separate crime but is made only for the purpose of determining the penalty to be imposed upon conviction of the primary offense. And such allegation does not amount to charging a different or greater degree of crime. * * *

"The section simply provides for a greater penalty upon conviction for the third or more times of the crimes specified. No one would contend a person could be prosecuted under this section just because he had two or more convictions. He must thereafter be convicted of one of such crimes, usually referred to as the primary offense, which offense has been committed after such conviction. When he is thus convicted a greater penalty is imposed because of his prior convictions. The section does not provide a separate crime.

"Defendant insists he was acquitted of being a habitual criminal by the jury verdict in the first trial. This, of course, is impossible. He could not be acquitted of a penalty nor could he be so convicted. * * *."

We referred to State v. Gaskey, 255 Iowa 967, 124 N.W.2d 723, pointing out that defendant was being punished for the primary offense and because of his prior convictions received a more severe penalty.

X. In the case at bar defendant was convicted of breaking and entering. Subsequently he was brought into court for determining prior convictions and for sentencing. His counsel demanded that he be sentenced for the offense of which he had been convicted. He was so sentenced but because of his prior

convictions received an enhanced penalty.

The case is—Affirmed.

GARFIELD, C. J., and LARSON, MOORE and STUART, JJ., concur.

MASON, RAWLINGS and BECKER, JJ., concur in result.

THORNTON, J., not sitting.