**Albert Charles WESSLING, Petitioner,**

**v.**

**John E. BENNETT, Warden, Respondent.**

**Civ. No. 68–C–2017–C.**

United States District Court
N. D. Iowa,
Central Division.

Sept. 3, 1968.

William D. Guthrie, Webster City, Iowa, for petitioner.

Richard C. Turner, Atty. Gen. of Iowa, and William A. Claerhout, Asst. Atty. Gen., Des Moines, Iowa, for respondent.

## MEMORANDUM AND ORDER

HANSON, District Judge.

This ruling is predicated upon a petition for a writ of habeas corpus.

The Court will not exhaustively relate the record facts at this time but will summarize the proceedings to date. On May 12, 1965, the petitioner was arrested for the attempted breaking and entering of a bowling alley in Webster City, Iowa. A county attorney's information was filed in district court on October 4, 1965, charging the petitioner with breaking and entering the Moose Club which is immediately adjacent to the bowling alley. On October 8, 1965, the petitioner appeared in district court with his attorney and was granted time in which to plead to the offense charged. A written plea of not guilty was filed October 14, 1965. Two new informations were filed on December 9, 1965. One charged breaking and entering. The other charged the defendant with breaking and entering and with being an habitual felon. On December 17, 1965, the petitioner was rearraigned. There is a dispute as to whether the defendant was arraigned on the habitual criminal charge. On December 22, the defendant was convicted of breaking and entering. Certain post conviction motions and exceptions were heard on December 29 at which time the Court stated that the defendant had the opportunity to affirm

or deny that he was the same person previously convicted. After a recess, the petitioner's attorney asked to withdraw from the case as "the defendant in this case has raised a question that I have not sufficiently and adequately advised him in connection with the habitual information filed herein." The hearing was continued until January 8, 1966. On that date the defendant appeared with new counsel and refused to submit to the jurisdiction of the court. The court entered a plea of not guilty to the habitual allegations of the information for the defendant. On February 7, 1966, a petition for a writ of certiorari was denied by the Supreme Court of Iowa. On March 8, 1966, the jury determined petitioner to be the same person who had twice been previously convicted of felonies. Petitioner was sentenced to thirty years in the penitentiary under increased penalty provision for recidivists. The petitioner appealed from the imposition of judgment and sentence and on May 2, 1967, the Supreme Court of Iowa affirmed petitioner's conviction in State v. Wessling, 150 N.W.2d 301 (1967).

Petitioner filed an application for a writ of habeas corpus with this Court on April 17, 1968. The Court issued a Show Cause Order and a plenary evidentiary hearing was held on May 14, 1968. Oral arguments were heard on June 6, 1968.

The issues which have been framed for resolution by the Court are: (1) Whether it was lawful under the Fifth and Fourteenth Amendments to the Constitution to hold petitioner to answer for an infamous crime without indictment by grand jury; (2) whether the Iowa recidivist statute contravenes the equal protection clause of the Fourteenth Amendment and imposes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments; (3) whether the petitioner was sufficiently charged with, arraigned on, and notified of the habitual criminal portion of the information pursuant to the Fourth and Fourteenth Amednments; (4) whether the petitioner was deprived of a fair trial and due process of law under the Fifth and Fourteenth Amendments in that the state court failed to charge the jury that the state's case was comprised of wholly insufficient circumstantial evidence and because the court did not instruct the jury that the prosecution's case was completely circumstantial; and, (5) whether an unfair impression of a tacit admission was created by a question asked by the prosecutor in transgression of the Fifth and Fourteenth Amendments to the Constitution.

Turning to the first issue presented, the petitioner concedes, as he must, that the Supreme Court of the United States has not yet held that an indictment by grand jury is an integral component of due process. In fact, the Supreme Court has positively held that proceeding by way of grand jury is not required of the States by due process of law. Hurtado v. People of State of California, 110 U.S. 516, 4 S.Ct. 111, 292, 28 L.Ed. 232 (1884). The petitioner appears to be contending that because there has been a great deal of vicissitude in the area of criminal law, indictment by grand jury will automatically be absorbed as a Fourteenth Amendment guarantee. The *Hurtado* rule remains viable in spite of changing concepts of fundamental fairness and its wisdom has been reaffirmed time and time again. See, e. g., Rivera v. Gov't of Virgin Islands, 375 F.2d 988 (3 Cir.); Hampton v. State of Oklahoma, 368 F.2d 9 (10 Cir.); Moore v. Henslee, 276 F.2d 876 (8 Cir.); Stewart v. Stephens, 244 F.Supp. 982 (D.Ark.). This Court must also confess that it adheres to the doctrine of *stare decises* and that it could not with propriety overrule a Supreme Court decision of long standing even if it were incongruous with present societal mores.

The petitioner cites Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed. 2d 252 (1960) as a case which highlights the critical importance of indictment by grand jury. That case involved the application of the Fifth Amendment to a prosecution by the United States. The Fifth Amendment is, of course, binding

on the United States, and as the Supreme Court said, "The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment." Id. at 218–219, 80 S.Ct. at 274. However, it does not necessarily follow that the protection thus secured against invasion by the federal government rises to lofty due process heights.

 The petitioner next urges that the Iowa recidivist statute is incompatible with the equal protection clause in several respects. He first argues that a criminal act is the gravamen of a criminal offense, not the proclivity to commit the offense and that the same criminal act is unequally penalized by the imposition of increased habitual criminal penalties under the habitual criminal statute. Here again, the petitioner seems to view recent trends in criminal law as alone sufficient to dictate abrogation of the time honored rule permitting legislative bodies to promulgate recidivist statutes based on the propensity to commit crime. Recidivist statutes are a perfectly legitimate domain of legislative regulation. Spencer v. State of Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). And "the constitutionality of the practice of inflicting severer criminal penalties upon habitual offenders is no longer open to serious challenge * * *." Oyler v. Boles, 368 U.S. 448, 451, 82 S.Ct. 501, 503, 7 L.Ed. 2d 446 (1962). See Moore v. State of Missouri, 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301 (1895).

 The petitioner further asserts that the Iowa recidivist statute violates the equal protection clause in that the enhanced penalty is invoked only for "larceny connected" crimes. Legislative bodies are to be given a wide latitude in the determination of whether to attack some, rather than all, of the manifestations of evil sought to be eliminated and that determination is "given the benefit of every conceivable circumstance which might suffice to characterize the classification as reasonable rather than arbitrary and invidious." McLaughlin v.

State of Florida, 379 U.S. 184, 191, 85 S.Ct. 283, 288, 13 L.Ed.2d 222 (1964). The Equal Protection Clause does not bar a state from recognizing "degrees of evil." Truax v. Raich, 239 U.S. 33, 43, 36 S.Ct. 7, 60 L.Ed. 131 (1915). See also Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). The state may validly call its experience into play and isolate a class of offenders or a family of offenses for different treatment, Skinner v. State of Oklahoma, 316 U.S. 535, 540, 62 S.Ct. 1110, 86 L.Ed. 1655 (1941), and can confine legislation to those classes of cases "where the need is deemed the clearest." Miller v. Wilson, 236 U.S. 373, 384, 35 S.Ct. 342, 344, 59 L.Ed. 628 (1915). And see Patsone v. Commonwealth of Pennsylvania, 232 U.S. 138, 34 S.Ct. 281, 58 L.Ed. 539 (1914).

However, even though great deference is accorded legislative wisdom, a "classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis.'" McLaughlin v. State of Florida, supra, 379 U.S. at p. 190, 85 S.Ct. at p. 287.

In Moore v. State of Missouri, supra, 159 U.S. at p. 678, 16 S.Ct. at p. 181, the Supreme Court considered the interplay between equal protection and recidivist statutes:

"The fourteenth amendment means 'that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances.' [State of] Missouri v. Lewis, 101 U.S. 22 [, 25 L.Ed. 989]. The general doctrine is that amendment, in respect of the administration of criminal justice, requires that no different degree or higher punishment shall be imposed on one than is imposed on all for like offenses * * *. And the state may undoubtedly provide that persons who have been before convicted of crime may suffer severer punishment for

subsequent offenses than for a first offense against the law, and that a different punishment for the same offense may be inflicted under particular circumstances, provided it is dealt out to all alike who are similarly situated. Pace v. [State of] Alabama, 106 U.S. 583 [, 1 S.Ct. 637, 27 L.Ed. 207]; Leeper v. [State of] Texas, 139 U.S. 462 [, 11 S.Ct. 577, 35 L.Ed. 225]."

■■ The petitioner has made no effort to point to an arbitrary basis for the classification of offenses made in the Iowa recidivist statute and can perceive of none. A recidivist statute is not constitutionally deficient for the mere reason that it does not include all felonies. People v. Lawrence, 390 Ill. 499, 61 N.E.2d 361, Cert. den. 326 U.S. 731, 66 S.Ct. 38, 90 L.Ed. 435, Rehear. den. 326 U.S. 808, 66 S.Ct. 136, 90 L.Ed. 492, 326 U.S. 810, 66 S.Ct. 228, 90 L.Ed. 495, 326 U.S. 811, 66 S.Ct. 469, 90 L.Ed. 495, 326 U.S. 812, 66 S.Ct. 482, 90 L.Ed. 496, 327 U.S. 818, 66 S.Ct. 814, 90 L.Ed. 1041. The enumerated offenses are of a like nature and the legislature could reasonably believe that persons committing such crimes have a greater criminal propensity or disposition than persons committing other crimes.

■ The petitioner's contention that the escalation of the penalty to a maximum of forty years under the recidivist statute inflicts cruel and unusual punishment is without merit. The Supreme Court has consistently held that enlarged penalties under recidivist statutes do not impose cruel and unusual punishment. See Graham v. State of West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1911); McDonald v. Commonwealth of Massachusetts, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901); Moore v. State of Missouri, supra. And this rule was apparently reaffirmed in Spencer v. State of Texas, supra.

The petitioner argues that sentencing him as an habitual felon abridged his Sixth and Fourteenth Amendment right to be informed of the nature and cause of the accusation against him in that he was not notified or given a copy of or arraigned on the "habitual charge" prior to trial on the breaking and entering charge. Petitioner alleges that he was prejudiced by the faulty procedure as he could have accepted a lesser charge of attempted breaking and entering proffered by the County Attorney if he had known of the "habitual charge" at the time of trial.

In the case at hand, petitioner was tried for breaking and entering on December 21 and 22. It is certain that petitioner was notified of the pending habitual criminal allegations on December 29, 1965. On that date, the petitioner's counsel withdrew after petitioner raised a question as to whether he had sufficiently advised petitioner of the recidivist part of the information. On January 8, 1966, the state court entered a plea of not guilty for petitioner.

■ Assuming, *arguendo*, that petitioner had not been notified of the habitual criminal portion of the information and that he had not been arraigned on that segment of the information before trial on the breaking and entering charge, the petitioner's position is as a matter of law untenable and without merit. The fallacy of petitioner's reasoning is that an allegation of prior convictions under the Iowa recidivist sections does not "charge" a separate or greater degree of crime but is made for the sole purpose of enhancing the sentence imposed upon the conviction of a primary offense because of the defendant's previous convictions. State v. Wessling, supra. The Supreme Court of the United States has without exception held that allegation of prior convictions under recidivist statutes is not a distinct charge of crimes but goes to the punishment only. See, e. g., Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1961); Gryger v. Burke, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948); Graham v. State of West Virginia, supra; McDonald v. Commonwealth of Massachusetts, supra; Moore v. State of Missouri, supra. The punishment imposed relates solely to the new crime but is

heavier if the offender is an habitual violator. See Gryger v. Burke, supra. Therefore, the "charge" for which notice and arraignment are prerequisite is the underlying substantive offense and not the habitual violator portion of the information or indictment since those allegations do not charge a crime.

However, the petitioner contends that even if the recidivist allegations do not charge a crime, the defendant has a right to be informed of the nature of the accusation and that the nature of the cause includes the penalty. Section 769.6 of the Code of Iowa requires preparation of two informations when an increased penalty is sought. One information must contain an allegation of prior convictions. A supplemental information must be drafted as to "the current offense only" and is the only information which can be read or mentioned to the jury on trial of the current offense.

Section 785.16 reads as follows:

"Prior conviction affirmed or denied. After conviction, but prior to pronouncement of sentence, if the indictment alleges one or more prior convictions which by the Code, subject the offender to an increased sentence, he shall have the opportunity in open court to affirm or deny that he is identical with the person previously convicted. If he denies the identity, sentence shall be postponed for such time as to permit a trial before a jury on the sole issue of the offender's identity with the person previously convicted.

The court may in its discretion reconvene the jury which heard the current offense or dismiss that jury and submit the issue of identity to another jury to be later impaneled. If the offender is found by the jury to be the person previously convicted, or if he acknowledges that he is such person, he shall be sentenced as prescribed in the Code."

Although Section 785.16 applies literally only to an indictment alleging prior convictions, the Supreme Court of Iowa apparently concluded that it also applies to informations charging prior convictions. State v. Wessling, supra.

 Under the Iowa recidivist statutes, the habitual portion of the information or indictment is read to the defendant only after the jury returns a verdict of guilty upon the primary offense charged. The defendant must then admit or deny his prior convictions. If he denies them, a jury must determine whether he is the same person who previously committed the alleged crimes. State v. Wessling, supra. The Supreme Court answered petitioner's argument in Oyler v. Boles, supra, 368 U.S. at p. 452, 82 S.Ct. at p. 503:

"Even though an habitual criminal charge does not state a separate offense, the determination of whether one is an habitual criminal is 'essentially independent' of the determination of guilt on the underlying substantive offense. Chandler v. Fretag, 348 U.S. 3, 8, [75 S.Ct. 1, 99 L.Ed. 4] (1954). Thus although the habitual criminal issue may be combined with the trial of the felony charge, 'it is a distinct issue, and it may appropriately be the subject of separate determination.' Graham v. [State of] West Virginia, 224 U.S. 616, 625 [32 S.Ct. 583, 56 L.Ed. 917] (1912). If West Virginia chooses to handle the matter as two separate proceedings, due process does not require advance notice that the trial on the substantive offense will be followed by an habitual criminal proceeding. See Graham v. [State of] West Virginia, supra."

A state does not have to give notice in advance of trial on the primary charge of its intention to invoke a recidivist statute "even where the former conviction is known." Graham v. State of West Virginia, supra, 224 U.S. at p. 629, 32 S.Ct. at p. 588.

 Due process does, however, demand that a defendant be given reasonable notice and an opportunity to be heard in relation to the recidivist com-

plaint, even though notice is not necessary prior to trial on the principal offense. Oyler v. Boles, supra. Petitioner was given adequate notice of the habitual allegations and given an opportunity to be heard in conformity with due process and in obedience to the Iowa statutes. Due process wants have been satiated.

■ Moreover, no legally recognizable prejudice could have emanated from the lack of notice of intended invocation of the habitual criminal provisions. Petitioner was entitled to a fair trial on his guilt or innocence of the crime charged. He was obviously not entitled to an offer by the County Attorney of a lesser plea and could have secured no vested interest in such an offer when made. The offer could have been withdrawn at any time even if petitioner had accepted it and he would have no standing to complain. Therefore, that a lack of knowledge of the habitual claim affected his judgment on whether to accept the lesser charge can give petitioner no solace as he was only entitled to have a trial comporting to basic standards of fairness—not to favoritism.

■ The Court should gratuitously remark that the shortcomings of not making a record of preliminary proceedings are clearly exemplified in the instant case. No transcript was made of the arraignments and proceedings prior to trial, and as a consequence, there was a conflict as to what transpired therein. The goal of finality in criminal process is certainly not served by the lack of a transcript of such proceedings.

The petitioner complains that he was deprived of due process of law in that evidence was admitted at trial which was the product of an illegal search and seizure in violation of certain provisions of the Code of Iowa. He maintains that he was not validly arrested under Section 755.7 of the Code of Iowa and also that the search and seizure of his clothes was contrary to Section 751.37 of the Code of Iowa. Petitioner's position is that when these Iowa statutory safeguards were enacted, they became a part of due process even though their adoption was not required by due process.

■ The Supreme Court of Iowa in State v. Wessling, supra, concluded that Section 755.4 of the Code of Iowa authorized the petitioner's apprehension and that he had been legally placed under arrest. The Court can ascertain no reference to Section 751.37 on appeal to the Supreme Court of Iowa either in petitioner's briefs or in the decision rendered. The petitioner cannot raise that Section for the first time in this Court as he has not exhausted his state remedies on that point. But, as will be seen, even if petitioner could raise that question in this litigation, it would be to no avail.

■ As to the contention that Section 755.7 rendered the petitioner's arrest invalid, the Supreme Court of Iowa was of a contrary opinion. It is not the function of a federal court on habeas corpus to serve as a reviewing court for an additional appeal and this Court cannot review mere errors of state law not reaching constitutional dimensions. See, e. g., Johnson v. Bennett, 386 F.2d 677 (8 Cir.); Wolfe v. Nash, 313 F.2d 393 (8 Cir.); McGarry v. Fogliani, 370 F.2d 42 (9 Cir.); Gemmel v. Buchkoe, 358 F.2d 338 (6 Cir.). Even if the Court were to believe the innuendo that the Iowa Supreme Court "has emasculated these statutes," the petitioner is in no better position. The Fourteenth Amendment dictates certain fundamental criteria as to the legality of searches and seizures. The states are not thereby precluded from promulgating additional and more stringent restrictions governing arrests, searches, and seizures, Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), and once adopted, such regulations are not assimilated into federal due process and do not devolve a duty of enforcement upon the federal courts. Lyons v. State of Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944); Davis v. State of North Carolina, 339 F.2d 770 (4 Cir.), Rev'd on other

grounds, 384 U.S. 737, 86 S.Ct. 1761 16 L.Ed.2d 895 (1966).

█ The case of Silva v. Cox, 351 F.2d 61 (10 Cir.), cited by petitioner in support of the proposition that state criminal procedures are a part and parcel of due process is inapposite. The *Silva* case involved the question of whether there had been an infraction of the New Mexico Constitution making a preliminary hearing mandatory. It is reasonable for state constitutional requirements to assume a federal constitutional role.

 The petitioner appears to be adamant against the legality of the arrest and the search and seizure under Fourteenth Amendment commandments as enunciated by court decisions. An arrest is effected when the person is subjugated to restraint and submission. See Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); Dupree v. United States, 380 F.2d 233 (8 Cir.). The validity of the arrest revolves about the question of whether the officers had probable cause to make the arrest without a warrant. Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Dupree v. United States, supra; Vincent v. United States, 337 F.2d 891 (8 Cir.); Harris v. Stephens, 361 F.2d 888 (8 Cir.).

The arrest made in the case at hand was constitutionally sound and as the Supreme Court of Iowa remarked in State v. Wessling, supra, 150 N.W.2d at p. 307, "it overtaxes our credulity to say that he is not under arrest." It is perfectly clear that petitioner was subjected to the dominion of the arresting officers and that he was placed in a significant physical restraint. The petitioner was confronted by the officers at approximately 5:30 a. m. on May 12, 1965. He was then handcuffed and taken to jail. Petitioner was advised of his right to an attorney, his right to remain silent, and that he could call an attorney prior to his being taken to a jail cell.

█ There was probable cause for the officers to believe that petitioner had committed an offense. The facts and circumstances available to the officers would "warrant a man of reasonable caution in the belief" that an offense had been committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); Clay v. United States, 394 F.2d 281 (8 Cir.). At approximately 3:15 a m., an electric alarm was triggered at a bowling alley in Webster City. Two officers arrived at about 3:15 and observed someone running in a pasture north of the bowling alley. The door of the bowling alley was ajar a few inches. A 1956 Chevrolet was found parked in a little driveway in the vicinity. At 4:30 or 4:45 when one of the officers returned to the bowling alley, someone was again seen running. A canvas duffel bag was discovered in the vicinity which contained a crowbar, hammer, and other tools. Two of the officers discovered a set of footprints and followed them. At one point, the tracks were lost but they were picked up again approximately two hundred yards distant. The petitioner was found sitting in a "cave like" area about one hundred feet west of a river. Petitioner was asked what he was doing and he responded that he was fishing. No fishing equipment was observed. Petitioner was fairly dirty and he had mud on his clothes. It is manifest that the officers had probable cause to believe that a breakin had been attempted and that petitioner was connected with it.

The petitioner urges that he was forced to submit to an unlawful search and seizure when articles of clothing were taken from him at jail without a search warrant. Officer Boardwell, one of the arresting officers, testified that the bag of tools was discovered shortly before 5:00 a. m. and that the petitioner was apprehended at approximately 5:30 a. m. Two officers and Agent Beek of the Bureau of Criminal Investigation stated that they received notice that petitioner was being brought in at about 5:30. At the police station, petitioner

was asked to remove his clothing and was supplied with other garments. Officer Kennedy said that this was done prior to 6:30 a. m., when some of the officers went to breakfast. Officer Spellmeyer thought they left for breakfast at 6:15 or 6:30.

■ The Court has held that petitioner's arrest was valid. The petitioner's clothing was taken incident to the lawful arrest. The " 'test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.' " Cooper v. State of California, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L. Ed.2d 730 (1967). When a person is under valid detention, his clothes may be taken and subjected to scientific scrutiny. See United States v. Caruso, 358 F.2d 184 (2 Cir.), Cert. den. 385 U.S. 862, 87 S.Ct. 116, 17 L.Ed.2d 88; Whalem v. United States, 120 U.S.App.D.C. 331, 346 F.2d 812, Cert. den. 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1965); Robinson v. United States, 109 U.S.App.D.C. 22, 283 F.2d 508, Cert. den. 364 U.S. 919, 81 S.Ct. 282, 5 L.Ed.2d 259 (1960); United States v. Guido, 251 F.2d 1 (7 Cir.), Cert. den. 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 843 (1958); Charles v. United States, 278 F.2d 386 (9 Cir.), Cert. den. 364 U.S. 831, 81 S.Ct. 46, 5 L.Ed.2d 59 (1960); Nelson v. Hancock, 239 F.Supp. 857 (D.N.H.), Cert. den. 386 U.S. 984, 87 S.Ct. 1292, 18 L.Ed.2d 234 (1967); Commonwealth v. Aljoe, 420 Pa. 198, 216 A.2d 50, 16 A.L.R.3d 1126 (1966); People v. Chiagles, 237 N.Y. 193, 142 N.E. 583, 32 A.L.R. 676.

The petitioner apparently cites Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), for the proposition that police may not embark upon a search without a warrant at a remote time or place. At the outset, there is considerable doubt as to whether the Preston doctrine is viable. Compare Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1966) and dissenting opinion of Douglas, J., at p. 62, 87 S.Ct. at p. 791. See also Morris v. Boles, 386 F.2d 395 (4 Cir.).

But in any event, the instant case is readily distinguishable from Preston. Preston involved the search of a vehicle long after the defendant had been confined to jail and "the fact that the police had custody of Preston's car was totally unrelated to the vagrancy charge for which they arrested him." Cooper v. State of California, supra, 386 U.S. at p. 61, 87 S.Ct. at p. 791. In this case, the seizure was not remote in that it occurred between the arrest at 5:30 a. m. and 6:15 or 6:30 a. m. Also, there was a nexus between the seizure and the reason petitioner was arrested. Further, the clothes were taken at the moment of arrest along with the petitioner and were in continuous custody, United States v. Caruso, supra; Charles v. United States, supra; and plain view of the officers. See Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); United States v. Caruso, supra; Caldwell v. United States, 338 F.2d 385 (8 Cir.).

As was aptly observed in United States v. Caruso, supra, 358 F.2d at p. 185, "The appellant's contention means that the seizure of his clothing could have been made constitutionally only if, immediately on his arrest, he had been stripped to the buff * * *." It is reasonable to defer the search of a person until reaching the police station. Morris v. Boles, 386 F.2d 395 (4 Cir.).

■ The petitioner claims that he was denied a fair trial in that the state court failed to charge the jury that the state's case consisted of circumstantial evidence that failed to demonstrate the petitioner's guilt and because the state court failed to charge the jury that the state's case was wholly circumstantial. The Court has carefully perused the transcript of the trial and finds ample evidence buttressing petitioner's conviction. The quantum of evidence introduced by the state most assuredly has not shorn petitioner of due process. See, e. g., Barquera v. People of State of California, 374 F.2d 177 (9 Cir., 1967), Cert. den. 389 U.S. 876, 88 S.Ct. 174, 19

L.Ed.2d 164 (1967); Faust v. State of North Carolina, 307 F.2d 869 (4 Cir.).

■ The Court's failure to instruct that the state's case was wholly circumstantial was not so arbitrary or oppressive as to strip the trial of fundamental fairness. Stump v. Bennett, 398 F.2d 111 (8 Cir. June 27, 1968). Instruction five sufficiently delineated the meaning of circumstantial evidence for the jury to comprehend the nature of the evidence introduced.

The Court must now explore the final contention asserted in support of the petition. Mr. Craig Beek of the State Bureau of Criminal Investigation was called to the witness stand by the prosecutor and they engaged in the following dialogue:

"Q. On how many occasions, Mr. Beek, did you question or interrogate the defendant in this case?

A. On two occasions we talked with the defendant.

Q. And when were these two occasions?

A. This was the morning of the twelfth, at the time he was arrested and brought to the police station, and on the morning of the thirteenth, upon my arrival here in Webster City.

Q. On either of these two occasions, or on any occasion, did the defendant ever purport not to know what crime he was charged with?

A. No, sir, he did not.

Q. Did he ever deny to you his guilt of this crime?

MR. LAWYER: This is objected to as being incompetent, irrelevant, and immaterial to any issue in this case.

THE COURT: He may answer.

A. He did not."

On appeal to the Supreme Court of Iowa, the petitioner challenged the last question and answer upon the basis that "The right of the accused to remain silent cannot be used against him in the trial." The Supreme Court of Iowa rejected the contention on three grounds: That the interrogatory did not raise a constitutional issue; that the jury was advised of petitioner's plea of not guilty; and that the plea put in issue the material allegations of the information; and that any constitutional flaw was of minor importance. The Court noted that at most "the question was of doubtful propriety, little probative value and negative in character."

■ The Court is constrained to agree with the conclusions of the Supreme Court. The Court of Appeals of the Eighth Circuit has adhered to the rule that an incriminating statement made in the accused's presence and a failure to deny it are admissible as evidence of acquiescence in the truth of the allegation when the circumstances warrant an inference that there would have been a contradictory exclamation if the statement had not been true. Arpan v. United States, 260 F.2d 649 (8 Cir.); Egan v. United States, 137 F.2d 369 (8 Cir.). Any error in the admission of evidence of the petitioner's silence in the case at hand would therefore not attain the status of a constitutional infirmity.

The case of Griffin v. State of California, 380 F.2d 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) cited by petitioner is inapplicable to the case at bar. *Griffin* held that the Fifth Amendment forbids either comment by the prosecutor upon an accused's failure to testify or jury instructions that silence is evidence of guilt. Although the viability of the Eighth Circuit rule is open to some question since *Griffin*, the Court does not feel that the *Griffin* case is sufficiently analogous to permit the Court to abrogate such a long standing rule.

■ But even if the Court were to assume that evidence of an accused's failure to respond to accusatory statements is constitutionally precluded, the error, if any, is de minimis in the instant case. Any constitutional imperfection must be deemed to be harmless under the doctrine

of Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). See also Stump v. Bennett, supra. Also, it appears that any conceivable defect was cured by the petitioner's attorney on cross-examination. The following questions were asked and answers given:

"Q. Officer Beek, I assume by your testimony, in saying that Mr. Wessling did not deny his guilt, that you are tempting (sic) to infer that he admitted it. Is that correct?

A. No, sir.

Q. If he didn't admit it, then he must have denied it.

A. He did not."

Accordingly, for the foregoing reasons, it is hereby ordered that the writ of habeas corpus is denied.